ARKOTA INDUSTRIES, INC. et al *v.*
Charles E. NAEKEL et al

81-111                                        623 S.W. 2d 194

Supreme Court of Arkansas
Opinion delivered November 2, 1981

*Friday, Eldredge & Clark,* by: *James M. Simpson,* for appellants.

*Blair, Cypert, Waters & Roy,* for appellees and cross appellants.

GEORGE ROSE SMITH, Justice. This is primarily a dispute between two rival factions that were stockholders in an Arkansas corporation, Arkota Industries. In 1970 Charles E. Naekel, a resident of Rogers, was promoting an idea he had for the manufacture of sets of shelving, to be sold by retail furniture stores. He interested two North Dakota farmers, Stedman and Pueppke, in investing in the forma-

tion of Arkota Industries, to make the shelving. The company began business in Rogers in 1971 and later moved to North Dakota. The trial judge commented that it was undercapitalized from the start. Stedman, Pueppke, and other North Dakotans had to make substantial investments in the venture from time to time, at $100 a corporate share. Naekel, who was the first president and manager of the concern, invested no money in it, but he was eventually allotted 700 shares of stock, of which he had 200 shares issued to his son Gerald and 50 to his son Bob.

To what extent the venture was actually profitable is in dispute. In 1973 or 1974 the company's accountants raised a question about the validity of the Naekel shares, owing to a doubt whether adequate consideration had originally been given for that stock. See Ark. Const., Art. 12, § 8. In May, 1975, the directors voted to oust Naekel as president and to cancel all the Naekel stock. Naekel protested the cancelation. In June of that year he settled his dispute with the corporation and the other faction by accepting about $7,600 in cash, two months' termination pay, and 50 shares of stock. A release agreement was signed by Naekel and by the lawyer then representing him. The cancelation of the shares issued to Naekel's sons was not affected by that settlement.

Naekel then organized Naekel Industries, Inc., to make similar shelving at Rogers. In 1977 the three Naekels brought this suit against Arkota Industries and the North Dakota stockholders, asserting that the defendants had wrongfully converted the plaintiff's stock by canceling it and had made slanderous statements about Naekel and his new company. Eventually that company was brought in as a party. There were various cross-demands between the opposing factions. The jury made only three awards: $20,000 to Gerald Naekel for the conversion of his 200 shares, $5,000 to Bob for the conversion of his 50 shares, and $1 as their punitive damages. On direct appeal Arkota Industries and the individual defendants argue two points for reversal. On cross appeal Charles Naekel and Naekel Industries argue two other points. Our jurisdiction includes tort actions. Rule 29 (1) (o).

First, on direct appeal, the court was right in directing a verdict for Charles and Bob Naekel on the issue of the defendants' liability for conversion. Apart from the question of the market value of the stock, which was submitted to the jury, the only issue on this phase of the case was whether the stock was cancelable for inadequacy of the consideration originally given for the shares. When, as here, the rights of creditors are not involved, the judgment of the directors or stockholders about the adequacy of the original consideration is conclusive in the absence of fraud. Ark. Stat. Ann. § 64-205 (C) (Repl. 1980); *Murray* v. *Murray Laboratories,* 223 Ark. 907, 270 S.W. 2d 927 (1954), relying upon a similar earlier statute. There is no assertion of fraud in the original transaction. Hence the stock was not subject to cancelation.

On the second issue, however, the appellants are right in insisting that the trial court erroneously instructed the jury that Gerald and Bob's stock was presumptively worth its par value ($100 a share). Corporate stock's par value has no direct bearing upon its market value years later, because the company may either have prospered or lost money. Consequently we have adopted the majority view that rejects a presumption that par value is also market value. *Beaty* v. *Johnston,* 66 Ark.529, 52 S.W. 129 (1899). That case is not distinguishable on the ground that it was an action in contract rather than in tort, for in both instances the controlling issue is the market value of the stock.

Nor was the error harmless. It is immaterial that there was evidence that the stock was worth more than $100 a share at the time of its conversion, for there were also accountants' figures to show that it was worth less. Nor does it matter whether the appellants' own proffered instruction about the determination of market value was correct, for they simply asked that the court eliminate the reference to the presumption in the appellees' proffered instruction, which the court would not do. The error was not harmless, because the jury awarded $25,000 for 250 shares, which was the presumed value to the penny.

On cross appeal neither of the two points argued requires a reversal. The court properly granted a partial

summary judgment against Charles Naekel, finding that his affidavit in response to the motion contained no basis for a finding of fraud with regard to the release executed by him and his lawyer. Nor does there appear to have been any violation of a fiduciary duty owed by the other corporate officers to Naekel. The only such duty that occurs to us is that of full disclosure, but the affidavit suggests no concealment on the others' part. Second, the court properly refused a proffered instruction with respect to the defendants' possible violation of our Unfair Practices Act, Ark. Stat. Ann. §§ 70-301 *et seq.* (Repl. 1979), for the requested instruction contained several provisions of the statute that were not pertinent to the case and might have been confusing to the jury. *Coca-Cola Bottling Co. of Blytheville* v. *Doud,* 189 Ark. 986, 76 S.W. 2d 87 (1934).

We mention one other matter. Counsel for the appellees submitted a 34-page supplemental abstract, for which they ask an allowance to their clients of $68 for printing expense and $300 for attorney's fees. The appellants dispute the need for a supplementary abstract and protest any award of compensation for its preparation.

Our Rule 9 (e) (1) authorizes such allowances, but we take this opportunity to explain that the Rule was intended merely to provide reimbursement to an appellee when there has been a clear-cut and demonstrable failure by the appellant to abstract matters essential to a full consideration of the issues raised by the direct appeal. Here there were no specific, discernible omissions in the appellants' abstract of the record. It was at most a matter of judgment whether the appellants' presentation should be supplemented by additional details. In such a situation the Rule does not create a lawsuit within a lawsuit for our decision. We do not award compensation for such a discretionary supplement to the abstract, leaving it instead to the appellee's counsel to decide whether he should provide additional abstracting at his client's expense, just as he must decide the appropriate length of his brief with its attendant expense. The appellees' motion is denied.

Reversed on direct appeal, affirmed on cross appeal.