Chester Earl RHODES *v.* STATE of Arkansas

CR 81-99                                                 634 S.W.2d 107

Supreme Court of Arkansas
Opinion delivered May 24, 1982
[Rehearing denied June 28, 1982.*]

*ADKISSON, C.J., would grant rehearing to affirm on merits. HICK-MAN and HAYS, JJ., would grant rehearing.

204

*William L. Bost, Jr., Joan Hartman,* and *Terry L. Foreman,* for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant Chester Earl Rhodes and Juanita Carr were charged with capital murder in the April 21, 1980 robbery and murder of Roland Kelley in Fayetteville in violation of Ark. Stat. Ann. § 41-1501 (Repl. 1977). Juanita Carr pleaded guilty to first degree murder, received a twenty-five year sentence and testified against the appellant. The first trial ended in a mistrial but the second trial resulted in a conviction with imposition of the death penalty.

The evidence established that Carr, then a 17-year-old prostitute, went to Roland Kelley's house in late afternoon and engaged in sexual relations. Kelley did not pay and she returned with appellant later that evening to collect from Kelley. Several witnesses saw a black couple walking toward the Kelley house and later saw a black couple leave by way of the back porch. Juanita Carr and appellant are both black. One witness, Beverly Kelley, positively identified appellant as the man she saw with Juanita Carr as the two of them walked toward, and later away from, the victim's house. Shortly after the couple left the Kelley house, he was found beaten to death. The victim's wallet and approximately $65 were missing. The wallet was later found in a lot where Juanita Carr stated she had thrown it. Juanita Carr testified that appellant had beaten the victim to death with a board which was found where she stated appellant had thrown it.

We reverse the conviction and remand the case for a new trial because of prejudicial error. That point and those which, though not error, are likely to confront the trial court upon retrial are discussed in this opinion.

Juanita Carr, the accomplice in the capital felony murder, was the direct evidentiary link between the appellant, the murder and the robbery. Her credibility was a key to the state's case and it was crucial to the appellant's case that

he be allowed to conduct as full an impeachment of the witness' credibility as the rules of evidence allow. The trial court granted the state's threshold motion and ruled that the appellant could not cross-examine Juanita Carr about previous incidents of shoplifting. The court ruled the appellant could only inquire about felony convictions within the past ten years. The appellant's attorney asserted his good faith basis for asking the question and made his proffer by stating "she has pursued . . . we know she has pursued a course of conduct over six years involving . . . thefts and devious activities, and the jury in evaluating her credibility should be made aware that she is a devious type of person." Appellant contends that the trial court erred in improperly limiting his cross-examination under Unif. Rules of Evid. 608 (b), Ark. Stat. Ann. § 28-1001 (Repl. 1979). Because of our prior case law we agree and reverse.

Rule 608 (b) provides that "[s]pecific instances of the conduct of a witness . . . if probative of truthfulness or untruthfulness" may be inquired into on cross-examination in the discretion of the trial court. Here the instance of conduct sought to be inquired into was shoplifting. In *Gustafson* v. *State*, 267 Ark. 278, 590 S.W.2d 853 (1979), we held that a cross-examiner, pursuant to 608 (b), may ask a witness about prior bad acts if that prior bad conduct has a bearing on the witness' character for dishonesty. We stated that 608 (b) allowed cross-examination about prior bad acts involving theft:

> For example, murder, manslaughter or assault do not *per se* relate to dishonesty. Burglary and breaking and entering would not be such misconduct unless the crime involved the element of theft. We believe that theft, as it is defined in the Arkansas Criminal Code, involves dishonesty.

Shoplifting is a form of theft and according to our language in *Gustafson*, supra, the cross-examination should have been allowed. Careful examination of the transcript reveals that appellant's trial attorney relied upon our *Gustafson* ruling in the preparation of his case. Juanita Carr's credibility was a key issue and under our prior ruling the jury

should have heard cross-examination on this issue. Because we cannot state that the appellant did not suffer prejudice as a result of the ruling we must reverse.

We have devoted much of our time in conference to the interpretation of Rules 608 (b) and 609. These rules deal with attacking or supporting the credibility of a witness by questioning about specific instances of conduct. The rules bar evidence of specific instances of conduct of a witness for the purpose of attacking or supporting credibility with two exceptions:

> (1)  Specific instances are provable when they have resulted in criminal convictions and meet all of the requirements set out in Rule 609.

> (2)  Specific instances in which there has been no criminal conviction may be inquired into on cross-examination of the principal witness, or of a witness giving an opinion of a principal's character for truthfulness, but the cross-examiner may not introduce extrinsic proof of the witness' misbehavior if the witness denies the event. Rule 608 (b).

We are satisfied that our *Gustafson,* supra, interpretation of Rule 608 (b) is too broad and we prospectively modify our interpretation of the rule to limit the inquiry on cross-examination to specific instances of misconduct clearly probative of truthfulness or untruthfulness as distinguished from conduct probative of dishonesty. McCormick views misconduct, "such as false swearing, fraud and swindling" as relevant to truthfulness. McCormick, *Evidence* § 42 at 87 (1954). Weinstein states "Rule 608 (b)) authorizes inquiry into specific instances of misconduct on cross-examination but requires that they must be 'clearly probative of truthfulness or untruthfulness,'" and gives the following illuminating footnote:

> *United States* v. *Fortes,* 619 F.2d 108 (1st Cir. 1980) (no abuse of discretion in trial court finding that sale of cocaine was not probative of truthfulness or untruthfulness; court reserved decision on whether a drug

transaction might ever be considered probative of a witness' veracity; though questions which court disallowed about witness' truthfulness in responding to investigators probing the incident surrounding his discharge as a police officer could well be probative of truthfulness and broad cross-examination of principal witness should be allowed when credibility of witness is central issue, no error where jury had been presented with much other evidence indicating witness' unreliable character and questionable trustworthiness); *United States* v. *Whitehead,* 618 F.2d 523 (4th Cir. 1980) (defendant who is lawyer testifying in his own behalf may be cross-examined about suspension from bar pursuant to Rule 608); *United States* v. *Cole,* 617 F.2d 151 (5th Cir. 1980) (cross-examination proper concerning submission to former employer of a false excuse for being absent from work); *United States* v. *Rabinowitz,* 578 F.2d 910 (2nd Cir. 1978) (evidence of witness' prior acts of sodomy on young children and consequent psychiatric treatment had too tenuous a bearing on credibility for court to find that trial judge had abused discretion in failing to admit; acts had no relevance to bias on the theory that witness needed to curry favor with DEA since more than five years had elapsed and no charges were pending); *United States* v. *Hastings,* 577 F.2d 38 (8th Cir. 1978) (drug transactions do not relate to truthfulness, citing Treatise); *United States* v. *Crippen,* 570 F.2d 535 (5th Cir. 1978), *cert. denied,* 100 S. Ct. 837 (1980) (inquiry as to whether character witness knew that defendant's firm, an automobile agency, had routinely turned back odometers; citing Treatise); *United States* v. *Young,* 567 F.2d 799, 803 (8th Cir. 1977), *cert. denied,* 434 U.S. 1079, 98 S. Ct. 1273, 55 L. Ed. 2d 786 (1978) (trial court properly refused to allow defendant to impeach prosecution witness by cross-examining her concerning her alleged offer to pay $10,000 to have her former husband killed; proposed question was not relevant to veracity and honesty and would have been highly prejudicial, citing Treatise); *United States* v. *McClintic,* 570 F.2d 685, 690-691 (8th Cir. 1978) (cross-examination about attempted swindle proper); *Lewis* v. *Baker,* 526 F.2d 470

(2d Cir. 1975) (in suit to recover for injuries allegedly incurred while in railroad's employ, court properly admitted employment application on which plaintiff falsely stated he had not received psychiatric treatment within past five years; evidence directly relevant to party's capacity for truth-telling, citing Rule 608); *United States* v. *Byrne*, 422 F.Supp. 147, 166 (E.D. Pa. 1976), *modified,* 560 F.2d 601 (3d Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S. Ct. 890, 54 L. Ed. 2d 796 (1978) (court refused to allow cross-examination as to whether prosecution witness had issued some checks which bounced; court found the matter was not probative of truthfulness since checks often bounce where no criminal intent is involved).

Weinstein, Evidence § 608 [05] p. 608-32.

Weinstein also states at p. 608-34:

Since Rule 608 (b) is intended to be restrictive — and was amended to ensure that it would be restrictively interpreted by trial courts — the inquiry on cross-examination should be limited to these specific modes of conduct which are generally agreed to indicate a lack of truthfulness. The rule should not be broadened to allow questions about behavior which indicates "a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony whenever it would be to the advantage of the witness." Such an approach paves the way to an exception which will swallow the rule. It is but a small step from there to the hypothesis that all bad people are liars, an unverifiable conclusion which runs counter to the doctrine that everyone is innocent of the particular crime charged until proven guilty.

Thus, in the future with the same set of facts before us, we would hold as stated in *United States* v. *Ortega*, 561 F.2d 803 (9th Cir. 1977) that while an absence of respect for the property rights of others is an undesirable trait, it does not directly indicate an impairment of the trait of truthfulness,

and cross-examination would not be allowed on specific acts of shoplifting for which there was no conviction.

The policy reasons for our prospective modification are threefold: (1) a defendant stands the possibility of conviction by reputation for unsavory but unrelated acts which have no real bearing on veracity, (2) a basic aim of Rules 608 and 609 is to offer inducements to a defendant to take the stand. Our *Gustafson* interpretation thwarts this objective, and (3) we desire to maintain an interpretation of the Uniform Rules that is reasonably consistent with other states as well as with the Federal Rules of Evidence. No other jurisdiction has interpreted the Uniform Rules or Federal Rules to allow cross-examination on specific acts of shoplifting.

The prospective application of this rule is to commence with trials had on or after the date this opinion becomes final. However, the prospective ruling will not apply to this case because it is now the law of the case that the evidence is admissible.

Appellant contends that the state's corroborating evidence, independent from that of accomplice Juanita Carr, is insufficient as a matter of law and therefore the case should be reversed and dismissed. Where the state relies on testimony from an accomplice to support a conviction, that testimony must be corroborated by other evidence which tends to connect the accused with the commission of the offense. Ark. Stat. Ann. § 43-2116 (Repl. 1977). It is unnecessary that the evidence be sufficient to sustain the conviction but the evidence must, independent from that of the accomplice, tend to a substantial degree to connect the defendant with the commission of the crime. *King* v. *State*, 254 Ark. 509, 494 S.W.2d 476 (1973). This court reviews the sufficiency of the evidence by the test of whether the verdict of guilt is supported by substantial evidence, which means whether the jury could have reached its verdict without resort to speculation and conjecture. *Cassell* v. *State*, 273 Ark. 59, 616 S.W.2d 485 (1981). Where circumstantial evidence is utilized, all facets of the evidence can be considered to constitute a chain sufficient to present a question for the resolution by the jury as to the adequacy of

the corroboration. *Klimas* v. *State,* 259 Ark. 301, 534 S.W.2d 202, cert. den. 429 U.S. 846 (1976). The court does not look to see whether every other reasonable hypothesis but that of guilt has been excluded. *Cassell* v. *State,* supra.

On appellate review of the sufficiency of the evidence, it is necessary to ascertain only that evidence favorable to the appellee and likewise permissible to consider the testimony that tends to support the verdict of guilt. *Chaviers* v. *State,* 267 Ark. 6, 588 S.W.2d 434 (1970).

The evidence, when viewed in the light most favorable to appellee, constituted a chain sufficient to corroborate the accomplice's testimony. Carol Fortner and Carl Matthew Jenkins testified that they met Juanita Carr and appellant at the time and place stated by Carr. Julia Kelley testified that she saw a black couple go in the back door of the victim's house and come out running twenty minutes later. Beverly Kelley identified the appellant as the man who was with Juanita Carr going toward and away from the victim's house. This amounts to substantial evidence to corroborate the testimony of accomplice Juanita Carr and we decline, as a matter of law, to reverse and dismiss on this point.

The same photographs are likely to be introduced at a new trial. We find no error in their admission for they depict the nature, extent and location of the wounds and are relevant to the issue of intent, state of mind and corroboration of the manner of beating. *Linder* v. *State,* 273 Ark. 470, 620 S.W.2d 944 (1981).

The Attorney General has filed a motion for an award of costs pursuant to Rule 9 (e) (1). Ark. Stat. Ann. Vol. 3A (Repl. 1979). Our rule authorizes reimbursement to an appellee but we order such allowances only where there has been a clear-cut and demonstrable failure by the appellant to properly abstract matters to a fair and full consideration of the issues raised on direct appeal. *Arkota Industries, Inc.* v. *Naekel,* 274 Ark. 173, 623 S.W.2d 194 (1981).

There was such a clear failure in this case and the state is awarded attorney's fees in the amount of $550 plus printing

costs for the preparation of the supplemental abstract.

We do not address the other issues for a number of reasons. Some motions were not timely made, on other points an objection was not made, on other points there is no record because the argument is made here for the first time and some of the issues are moot because the case is remanded.

Reversed and remanded.

HICKMAN and HAYS, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting in part. The majority in its opinion concedes that the defendant was entitled to cross-examine the State's main witness about her past misconduct which involved thefts over a period of six years. We do not know the exact nature of the activity because the trial judge concluded that unless there was actually a conviction a witness could not be questioned about misconduct. Of course, Ark. Stat. Ann. § 28-1001, Rule 608 (b) (Repl. 1979) clearly authorizes such questions under some circumstances.

When we first considered Rule 608 (b) en banc in *Gustafson* v. *State,* 267 Ark. 278, 590 S.W.2d 853 (1979), we recognized that the rule permitting impeachment of a witness for prior misconduct had been restricted. That misconduct must relate to truthfulness or untruthfulness. We concluded that theft, as defined by the Arkansas Criminal Code, involved dishonesty and that in our judgment related to veracity. We relied on WEINSTEIN'S EVIDENCE, 608 [5] (1981), which related in detail the various authorities that had also concluded various types of similar dishonest acts had a bearing on veracity. That was our prerogative. We confirmed *Gustafson* in *Divanovich* v. *State,* 271 Ark. 104, 607 S.W.2d 383 (1980).

The majority opinion expresses dissatisfaction with our conclusion in *Gustafson* and are overruling it *sua sponte* prospectively. If I understand it they are holding that theft has no bearing on the character trait of honesty and

such misconduct may not be used to impeach a witness or defendant. The opinion states:

> Thus, in the future with the same set of facts before us, we would hold that while an absence of respect for the property rights of others is an undesirable trait, it does not directly indicate an impairment of the trait of truthfulness, and cross-examination would not be allowed on specific acts of shoplifting for which there was no conviction.

There is, of course, no such crime as "shoplifting" in Arkansas. That is simply a nice word for a person who steals from a retail store, just as embezzlement is a fancy word for theft by a white collar worker. Our criminal code simply lumps all thefts together, categorizing thefts by the amount stolen, the way it was obtained, and perhaps the kind of property taken. *See* Ark. Stat. Ann. § 41-2203 (Repl. 1977). The distinction between the categories lies in the punishment.

The majority justifies its decision on the basis that no other jurisdiction has made such an interpretation of Rule 608 (b) like ours in *Gustafson*. To buttress the statement the majority opinion quotes parts of two pages from WEINSTEIN'S EVIDENCE par. 608 [5] (1981). The most lengthy quote is from a footnote which is not at all illuminating, as claimed, because *Gustafson* is not inconsistent with any of the decisions cited in the footnote.

The conclusory quote from WEINSTEIN'S EVIDENCE reads:

> Since Rule 608 (b) is intended to be restrictive — and was amended to ensure that it would be restrictively interpreted by trial courts — the inquiry on cross-examination should be limited to these specific modes of conduct which are generally agreed to indicate a lack of truthfulness. The rule should not be broadened to allow questions about behavior which indicates 'a disregard for the rights of others which might reasonably be expected to express itself in giving

false testimony whenever it would be to the advantage of the witness.' Such an approach paves the way to an exception which will swallow the rule. It is but a small step from there to the hypothesis that all bad people are liars, an unverifiable conclusion which runs counter to the doctrine that everyone is innocent of the particular crime charged until proven guilty.

The majority opinion leaves out of its extensive quotation several statements from WEINSTEIN which were the basis of our decision in *Gustafson*. The majority quotes Professor McCormick's 1954 work on evidence where he stated that misconduct relevant to truthfulness would include such acts as "false swearing, fraud and swindling." The majority does not quote from WIGMORE which reads "robbery, assault and adultery do not 'directly indicate an impairment of the trait of veracity' while fraud, forgery and perjury do." 3 WIGMORE ON EVIDENCE § 982 (1940). In the original text Wigmore wrote:

> Now there is no doubt that conduct is relevant to character. An assault is relevant to indicate a violent character; a fraud is relevant to indicate a dishonest character.

Wigmore goes on to discuss two approaches courts have made to the problem:

> (1)   one is that any kind of misconduct, as indicating a bad character is admissible; thus, a robbery or an assault or an adultery may be used although no others directly indicates an impairment of the trait of veracity.

> (2)   the other attitude is entirely logical, and admits only such misconduct as indicates a lack of veracity, fraud, forgery, perjury and the like.

The majority opinion does not refer to WEINSTEIN'S quote of Dean Ladd's list on offenses which related to veracity which reads as follows:

> The group of offenses including forgery, uttering

forged instruments, bribery, suppression of evidence, false pretenses, cheating, embezzlement, roughly disclose a type of dishonesty and unreliability characteristic of those lacking veracity.

Nor is the following paragraph referred to:

In the federal courts, the most common kinds of convictions would include forgery, income tax frauds including bribery, bankruptcy fraud, making false statements of a variety of kinds such as those in obtaining guns or permits and perjury and false swearing. The usual variety of state crimes include forgery, bribery, false pretenses, cheating, embezzlement, swindling, false advertising, frauds on creditors, issuing bad checks or using another's credit card without authority, criminal impersonation and unlawfully concealing a will. . . . WEINSTEIN'S EVIDENCE par. 608 [5].

Is the majority limiting its holding to the short statement from McCORMICK that such misconduct only includes "false swearing, fraud and swindling"? Does a swindler tend to lie and a thief not tend to lie? Or is the majority holding that all thievery is not relevant as evidence when it makes the broad statement, ". . . we would hold that while an absence of respect for the property rights of others is an undesirable trait, it does not directly indicate an impairment of the trait of truthfulness, . . . " Evidently so. Dean Ladd in 89 U. Pa. L. Rev. 194 (1940), stated much better than I can why a jury should know a witness is a thief:

Any classification of crimes on the basis of their relationship to credibility is difficult. Personal crimes of murder, assault, and mayhem, show a vicious disposition but not necessarily a dishonest one. *On the other hand robbery, larceny and burglary, while not showing a propensity to falsify, do disclose a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony whenever it would be to the advantage of the witness.* If the witness had no compunctions against stealing

another's property or taking it away from him by physical threat or force, it is hard to see why he would hesitate to obtain an advantage for himself or friend in a trial by giving false testimony. Furthermore, such criminal acts, although evidenced by a single conviction, may represent such a marked breach from sanctioned conduct that it affords a reasonable basis of future prediction upon credibility. It is quite possible that with each other the robber class hold to some code of honor, but it is unlikely that it would express itself in court proceedings if there were a motive to falsify. *The group of offenses including forgery, uttering forged instruments, bribery, suppression of evidence, false pretenses, cheating, embezzlement, roughly disclose a type of dishonest and unreliability characteristic of those lacking veracity. Not only would witnesses with such records tend to be conscience free in giving false testimony, but these crimes, being of the enlarged crimen falsi class might indicate the propensity to gain by false means and thus to falsify.* Perjury has been regarded a sufficient indication of the probability of future perjury that some legislatures in removing incompetency of the common law retained it as to perjury. Whether perjury in one case would be a stronger indication that the witness would perjure in another than the commission of other crimes in the crimen falsi group is questionable. [Emphasis added.]

After careful deliberation we decided in *Gustafson* that there was a relationship between stealing and a lack of veracity. We stated that burglary and robbery would not bear on veracity unless a theft was involved. *See People* v. *Burdine,* 99 Cal. 3rd 442, 160 Cal. Rep. 375 (1979). A jury should know if a witness or a defendant has stolen before. Evidently the majority does not believe thieves tend to lie.

Trial lawyers and judges know that often a case rests upon the statement of only one witness. Sometimes that is a witness for the State, sometimes the defendant. Our rules exist to provide the jury or judge with all the relevant information available to decide if a witness or defendant is telling the truth. The majority is denying that tool to defense

attorneys, and ultimately denying us all a valuable tool in the search for the truth.

I find no good cause to overrule *Gustafson* which is a definative decision and replace it with a decision that leaves too many questions unanswered. Neither party asked us to overrule *Gustafson;* we have not had the benefit of argument on this issue and I am convinced the action is not only precipitous but it is wrong.

HAYS, J., joins in this dissent.