Benjamin F. LACKEY, Jr. *v.* Mark. A. MAYS, Trent Properties, A Partnership, and Charles W. Trent, et al.

CA 06-521                                        286 S.W.3d 193

Court of Appeals of Arkansas
Opinion delivered August 27, 2008

[Rehearing denied November 12, 2008.*]

---

* ROBBINS and GRIFFEN, JJ., would grant rehearing in part.

*Callis L. Childs*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Michael J. Emerson*, for appellees Trent Properties, A Partnership, and Charles W. Trent.

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Sarah E. Greenwood*, for appellee Mark A. Mays.

D.P. MARSHALL JR., Judge. Nine summers ago Conway police officer Benjamin Lackey was involved in two traffic accidents on the job. In mid-June 1999, Lackey was rear-ended at an intersection by Mark Mays. About five weeks later, Lackey was t-boned in a shopping center parking lot by Dana Bramblett, who was working for Deliveries R Us. Lackey filed one lawsuit covering both accidents against more than twenty defendants: Mays, Bramblett, Deliveries R Us, Trent Properties (the partnership that owned the shopping center), various related parties whose identity is not important at this point, and numerous John Does.

This is the third appellate proceeding in the case. In *Lackey I,* the supreme court refused writs of certiorari and mandamus after the circuit court severed Lackey's claims against Mays from those against all the other defendants. *Lackey v. Bramblett,* 355 Ark. 414, 139 S.W.3d 467 (2003). In *Lackey II,* we ordered rebriefing to cure defects in Lackey's abstract and addendum. *Lackey v. Mays,* 100 Ark. App. 386, 269 S.W.3d 397 (2007).

We come now to the merits. The circuit court severed this matter, splitting it into two cases: CV-2002-478A Lackey v. Mays and CV-2002-478B Lackey v. all the other defendants. The court eventually granted summary judgment to the Trent defendants. A few months later, the parties tried Lackey's claim against Mays to a jury, which found for Lackey and awarded him $1,784.18 — his medical bills related to the first accident. Lackey nonsuited all his claims against all the remaining defendants in CV-2002-478B. On appeal, Lackey challenges the summary judgment for the Trent defendants. The question presented is the Trents' duty to Lackey. He also seeks a new trial against Mays. There the main issues are whether the circuit court erred by holding that Mays was not jointly liable for injuries Lackey sustained in the second accident (and limiting Lackey's proof at trial accordingly) and by mishandling a note from the jury during deliberations.

*The Trent Defendants.* Lackey alleged that the Trent defendants were negligent in failing to design, install, and maintain their parking lot in a safe condition, and in failing to properly warn him about the lot's dangers. The circuit court granted summary judg-

ment on all these issues. The Trents say we have no jurisdiction to review this point because Lackey's notice of appeal was untimely, but that summary judgment was proper in any event.

■ We have jurisdiction. After the circuit court entered summary judgment for the Trent defendants, the delivery-service defendants and all the John Does remained in that part of the severed case. Lackey could not appeal the summary judgment until all his claims against these defendants were resolved. *Shackelford v. Arkansas Power & Light Co.*, 334 Ark. 634, 635-36, 976 S.W.2d 950, 951-52 (1998). When the circuit court granted Lackey nonsuits of all his claims against all the remaining defendants, the summary judgment for the Trent defendants became final and appealable. *Winkler v. Bethell*, 362 Ark. 614, 619-22, 210 S.W.3d 117, 119-22 (2005). The legal analysis does not change even though the circuit court first granted the delivery-service defendants a nonsuit of Lackey's claims against them. That step was error, as the circuit court recognized when it set aside the first nonsuit order. Lackey's timely notice of appeal following the nonsuit order entered at *his* request established this court's jurisdiction.

■ On the merits, the circuit court correctly granted summary judgment to the Trent defendants. Duty is always a question of law. *Heigle v. Miller*, 332 Ark. 315, 321, 965 S.W.2d 116, 120 (1998). Lackey acknowledges that he was an invitee on the parking lot: after completing a personal errand at the shopping center, he had returned to work as a Conway police officer at the time of the accident. Because Lackey was an invitee, the Trents had a presumptive duty to use ordinary care to maintain the parking lot in a reasonably safe condition for him. AMI Civil 2008, 1104; *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 385, 101 S.W.3d 881, 884 (2003). They had no such duty, however, if Lackey knew about some condition of the parking lot and appreciated the dangers it involved. *Van DeVeer*, 81 Ark. App. at 385, 101 S.W.3d at 884. Nor did the Trents have a duty to Lackey if a condition on the lot and the related risk were apparent to, and would be recognized by, a reasonable person in Lackey's position exercising ordinary perception, intelligence, and judgment. *Van DeVeer*, 81 Ark. App. at 386, 101 S.W.3d at 885. The obvious-danger exception does not apply in certain extraordinary situations. If Lackey's job forced him as a practical matter to encounter an obvious risk, then the exception is inapplicable. *Jenkins v. Int'l*

*Paper Co.*, 318 Ark. 663, 670-71, 887 S.W.2d 300, 304 (1994). The obvious-danger exception likewise does not apply if, because of other extraordinary circumstances, the Trents should have reasonably anticipated that Lackey would be exposed to some unreasonable risk despite his knowledge of the risk or its obviousness. *Van DeVeer*, 81 Ark. App. at 389-90, 101 S.W.3d at 886-87.

Lackey argues that genuine issues of material fact exist about whether he knew of and appreciated the danger from new intersections in the parking lot, the operation of Deliveries R Us in the shopping center, and the combination of those circumstances. We disagree.

First, the new intersections. These new cut-through lanes were obvious to a driver in Lackey's position. Parking lots, by their very nature, contain intersections so cars can move from streets to parking spaces and vice versa. Lackey admitted that as a police officer he had worked on wrecks at the existing cut-through lanes in this parking lot. And the facts showed that he appreciated the risks of the new cut-through lanes. In his brief, Lackey states that — because he knew that wrecks had occurred at the existing intersections — he slowed down and looked left and right twice before entering the new cut-through lane where Bramblett t-boned his car. Lackey's expert concluded that the danger was not open and obvious, but Lackey's actual knowledge undercuts this conclusory opinion. Lackey, moreover, did not argue that he had no choice except to use this particular intersection to do his job. Because Lackey knew and appreciated the risks of the new intersections, the circuit court's no-duty ruling about them was correct. *Van DeVeer*, 81 Ark. App. at 385, 101 S.W.3d at 884.

Second, Deliveries R Us. Lackey did not know that the delivery service — which promised hot food deliveries within forty five minutes — was operating from an office in the shopping center. But the presence of this kind of business, the presence of a delivery-service driver in a public parking lot, and the risks related to both, are all common circumstances that would have been apparent to a reasonable driver in Lackey's position. *Van DeVeer*, 81 Ark. App. at 386, 101 S.W.3d at 885. His expert's opinion to the contrary rested on no facts of record about the particulars of this accident. The circuit court implicitly disregarded it as a conclusory opinion, and properly so. *Bushong v. Garman Co.*, 311 Ark. 228, 237, 843 S.W.2d 807, 812-13 (1992). In any event, Lackey offered no evidence that his wreck with Bramblett was proximately caused by the fact that she was working for a delivery

service based at the shopping center when she hit Lackey's vehicle. *Union Pacific Railroad Co. v. Sharp*, 330 Ark. 174, 181, 952 S.W.2d 658, 662 (1997). There was, for example, no evidence that Bramblett was speeding to meet a delivery deadline. The presence of the delivery service thus created no duty on the Trents to do more.

Third, the combination. Despite Lackey's forceful argument, we are not persuaded that the combination of all the circumstances surrounding this accident leads to a different conclusion. The whole is no more than the sum of the parts. Lackey had experienced first-hand the dangers of cut-through intersections in this parking lot. The record contains no facts showing that Bramblett's work as a delivery driver proximately caused this accident. Lackey's job did not compel him to travel the route he chose through the parking lot. Here again, the conclusory opinion from Lackey's expert added nothing of evidentiary value. And unlike in the *Van DeVeer* case, no fact question is presented about what the Trents should have reasonably anticipated in the unexceptional circumstances presented by this record. 81 Ark. App. at 389-90, 101 S.W.3d at 886-87. The circuit court, therefore, correctly ruled as a matter of law that the Trents violated no duty of care owed to Lackey.

*The Mays Trial — Lackey's Damage.* The circuit court ruled that Lackey sustained separate and distinct injuries in the two accidents and that a jury could apportion his damages between those accidents. During Lackey's trial against Mays about the first accident, the court therefore limited Lackey to presenting evidence of his injuries existing before 28 July 1999 — the day of his wreck with Bramblett. Lackey argues, as he did below, that he suffered a single indivisible injury in the two accidents and that the circuit court should have allowed him to prove and seek damages from both accidents during his trial against Mays.

Whether all the defendants here were jointly liable to Lackey was a fact-bound question of law for the circuit court. *McGraw v. Weeks*, 326 Ark. 285, 289-90, 930 S.W.2d 365, 368 (1996). The court had to determine whether Lackey's injuries from both accidents could be divided based on the defendants' respective contribution to the accidents' causes. *Ibid.; see also* Restatement (Third) of Torts § A18 cmts. b, c, & e (2000). We review the circuit court's decision for clear error. *McGraw*, 326 Ark. at 289-90, 930 S.W.2d at 368.

The proof went both ways. Lackey presented evidence showing that his injuries were indivisible. Dr. Robert McCarron evaluated Lackey after his second wreck. In his affidavit, Dr. McCarron stated that Lackey injured the same parts of his body in both wrecks, that the second wreck had aggravated injuries from the first wreck, and that Lackey had not recovered from the first wreck before he was in the second. Dr. McCarron opined, both in his affidavit and later in his deposition, that there was no reasonable or logical medical basis for dividing the harm between the two wrecks.

Mays, on the other hand, presented evidence showing that Lackey's injuries could be divided. In mid-July, Dr. Gil Johnson, who treated Lackey after the first accident, noted that Lackey had pretty much recovered from that accident. A few days later, Lackey completed physical therapy and cancelled his last therapy appointment. Then the second accident happened. Lackey returned to Dr. Johnson, who again noted that Lackey had nearly recovered from his first accident before the second accident. Mays also argues that Dr. McCarron contradicted his affidavit in his subsequent deposition. When Dr. McCarron first saw Lackey, he did not know that Lackey had long suffered chronic neck pain since his service in the Gulf War in 1991. After he learned about that pain, Dr. McCarron testified in his deposition that Lackey had a chronic cervical strain that might have pre-existed his June 1999 accident. Lackey's testimony and the medical evidence also showed that Lackey's pain level just before the second accident was actually less than it had been before the first accident.

This record thus contains evidence supporting each party's position about divisibility. The circuit court ruled that the evidence provided a reasonable basis for determining (1) that Mays's conduct caused less than Lackey's entire damages and (2) the amount of damages separately caused by Mays's conduct. We see no clear error in that ruling. *McGraw*, 326 Ark. at 289-90, 930 S.W.2d at 368; Restatement § 26 cmt. f. The fact that the amount of damages attributable to each accident cannot be determined with mathematical precision does not mean that the damages are indivisible. Restatement § 26 cmt. f. Based on this record, we hold that the circuit court's conclusion about divisibility was not clearly erroneous. *McGraw*, 326 Ark. at 289-90, 930 S.W.2d at 368. The resulting limits on Lackey's evidence and his damage claim against Mays were proper in light of the divisibility decision.

*The Mays Trial — The Jury's Note.* Lackey next argues that the circuit court erred by failing to disclose part of a cryptic note it received from the jury during deliberations. The note stated:

> Is It clear, we are considering only a time period of
> Accident to Discharge of therapy!
> Basically a month!
> *What is lawful guideline of compensation!*
> *amount is party seeking a set amount?*

After getting the note, the court read the first three lines — but not the last two lines, which we have italicized — in open court. The court then said:

> I don't have an answer to that. I think it's based upon instructions given to you as far as the other one. And that's what I think the answers are on both of them. I've got to respond in writing on it. I wrote [at the bottom of the jury's note], you must decide the case based upon the evidence and the instructions read to you. And I will sign it.

The court made the note (with the response) a part of the record and sent it back to the jury. Neither of the parties asked to see the note. Neither party objected to the court's answer. The circuit court, however, erred. It should have read the entire note to the parties and their lawyers outside the presence of the jury. *Howard v. State*, 367 Ark. 18, 35-36, 238 S.W.3d 24, 38 (2006).

Our law presumes that the circuit court's error prejudiced Lackey unless the lack of prejudice is clear. *National Bank of Commerce v. HCA Health Services*, 304 Ark. 55, 62-64, 800 S.W.2d 694, 699-700 (1990); *Dickerson Construction Co. v. Dozier*, 266 Ark. 345, 357, 584 S.W.2d 36, 43 (1979). Lackey argues that he was prejudiced because, if the court had read the entire note in open court, then he might have asked to reargue damages, or for more jury instructions, or moved for a nonsuit or mistrial.

These opportunities were indeed lost. But considering the record as a whole, we conclude that they were also largely illusory. Lackey was entitled to none of them as a matter of right — the availability of each of Lackey's hypothetical responses to the jury's improper inquiries rested entirely within the circuit court's discretion. *Wright v. Eddinger*, 320 Ark. 151, 156, 894 S.W.2d 937, 940 (1995) (voluntary nonsuit); *Sterling v. State*, 315 Ark. 598, 599-600,

868 S.W.2d 490, 491 (1994) (additional argument); *Pruitt v. State*, 8 Ark. App. 350, 355-57, 652 S.W.2d 51, 54-55 (1983) (more jury instructions, mistrial). The undisclosed part of the note provided no basis for a mistrial. The possibility of a post-submission nonsuit was remote at best. The court's prior instructions on damages were complete and correct. And Lackey had already made a full closing argument, in two parts, about his damages.

No trial is perfect. *Hall v. State*, 15 Ark. App. 235, 239, 691 S.W.2d 884, 886-87 (1985). The circuit court's handling of this note was imperfect, but the lack of prejudice is manifest. As far as the jury was concerned, all its questions were responded to. The court's response to the note was correct — it gave the jury the information it required to finish deliberations without directly answering the improper inquiries in the second part of the note. No abuse of discretion occurred in the circuit court's decision to give the jury the information required, rather than all the information requested. Ark. Code Ann. § 16-64-115 (Repl. 2005); *National Bank of Commerce*, 304 Ark. at 63-64, 800 S.W.2d at 699-700. Because we can say with confidence that Lackey suffered no prejudice in these circumstances, we hold that the circuit court's error does not justify a new trial. *National Bank of Commerce*, 304 Ark. at 63-64, 800 S.W.2d at 699-700; *Dickerson Construction Co.*, 266 Ark. at 357, 584 S.W.2d at 43.

■ *The Miscellaneous Issues.* Lackey also appeals the circuit court's order requiring him to sign releases allowing Mays to obtain some of his employment and Social Security records. Lackey asks us to address this point because, if the Trents' summary judgment is reversed, then they will probably seek similar releases on remand. Because we affirm summary judgment for the Trent defendants, and Lackey does not seek reversal of the Mays judgment based on this issue, Lackey's arguments are moot. *Cotten v. Fooks*, 346 Ark. 130, 133, 55 S.W.3d 290, 292 (2001). In any event, the documents for which Lackey provided releases were not used for summary-judgment purposes or at the Mays trial. They could have been obtained by the defendants with other discovery tools. The circuit court, therefore, did not abuse its discretion by ordering Lackey to sign the releases, nor was Lackey prejudiced by that order. *Rickett v. Hayes*, 251 Ark. 395, 401, 473 S.W.2d 446, 449 (1971).

■ Next, as Lackey points out, the circuit court improperly assessed $600.00 of jury costs against Mays pursuant to Ark.

Code Ann. § 16-34-102 (Repl. 1999). Because this was a civil case, that award was error. *Miller v. Scroggins*, 260 Ark. 685, 686-87, 543 S.W.2d 476, 476-77 (1976). But Mays has not appealed this error. Lackey has no standing to assert it and suffered no prejudice from it. We therefore affirm on this issue too.

██  Mays has moved for attorney's fees and costs related to his supplemental abstract and supplemental addendum. Lackey counters that these supplements were entirely unnecessary and moves for his fees and costs incurred in responding to Mays's motion. The parties agree that *Arkota Industries, Inc. v. Naekel*, 274 Ark. 173, 177, 623 S.W.2d 194, 196 (1981), provides the governing legal standard. With one exception, Lackey has the better of this argument. Much of Mays's supplemental materials were helpful during our deliberations, but that is not the standard for recovery. *Arkota Industries*, 274 Ark. at 177, 623 S.W.2d at 196. Several pages of the supplemental abstract of Dr. McCarron's testimony were essential to our full consideration of an issue — joint liability. Only this work would support a modest fee award. In light of the fees and expenses incurred by Lackey in demonstrating the lack of merit in most of Mays's request, however, we exercise our discretion under Ark. Sup. Ct. R. 4-2(b)(1) and decline to award any party any fees. We deny both motions.

The judgments are affirmed.

BIRD and GLOVER, JJ., agree.