2010 Ark. App. 261

**Marc and Billie HEFLIN, Appellants**

v.

**Phil and Crystal BRACKELSBERG, Appellees.**

**No. CA 09–912.**

Court of Appeals of Arkansas.

March 17, 2010.

Supplemental Opinion April 14, 2010.

John David Cloud, Arkadelphia, AR, for appellant.

Josh Sanford, Sanford Law Firm, PLLC, Russellville, AR, for appellee.

D.P. MARSHALL JR., Judge.

Mr. and Mrs. Brackelsberg agreed to sell their house to Mr. and Mrs. Heflin for $450,000.00. The Heflins backed out. They did so because the home appraised for $420,000.00 and their bank would not loan them more than that amount on the property. The Brackelsbergs did not return the Heflins' $5,000.00 earnest money. They eventually sold their house to someone else for $422,500.00. More than a year after their deal fell apart, the Heflins sued the Brackelsbergs for the earnest money. The Brackelsbergs counterclaimed, alleging that the Heflins were the ones in breach and seeking actual damages. The circuit court granted the Brackelsbergs summary judgment. The court awarded the Brackelsbergs the difference between the amount the Heflins had agreed to pay and the later sales price (less the retained earnest money). The circuit court also awarded attorney's fees and costs, but refused any pre-judgment or post-judgment interest. The Heflins appeal. The Brackelsbergs cross-appeal.

## I.

The material facts were undisputed. We view them in the light most favorable to the Heflins. *Sykes v. Williams,* 373 Ark. 236, 239–40, 283 S.W.3d 209, 213 (2008).

The parties' form contract had three "Purchase Price" options: new financing, loan assumption, or cash. The new-financing option, in turn, contained two possibilities, a new loan or other financing. Embedded within the new-loan route, there were several different types of loans (*e.g.,* conventional, VA, FHA) to choose among and a condition: the contract would be "[s]ubject to the Property appraising for not less than the Purchase Price and the Buyer's ability to obtain a loan to be secured by the Property in an amount of.... $_____" on particular terms. The other financing route left more details open. Under this provision, the contract would be "[s]ubject to the Buyer's ability to obtain financing in the amount of $_____ from a source and being payable as follows: _____."

The Heflins agreed to secure other financing. They filled in the form-contract's blanks, making the deal subject to their ability to obtain "$445,000.00" in financing on "Terms set forth by Bank." The contract also required the Heflins to "make a complete application for a new loan" within five business days of the Brackelsbergs' acceptance. To satisfy this obligation, the Heflins "agree[d] to provide lender with any requested information and pay for any credit report(s) and appraisals required to make the loan." The contract also provided that "Buyer understands that failure to make a complete loan application as defined above may constitute a breach of this Real Estate Contract."

The Heflins called a loan officer at their bank within five business days of signing the contract. She told them that they first needed to get an appraisal. The Heflins ordered one, which was completed several weeks later. This appraisal valued the Brackelsbergs' home at $420,000.00. The Brackelsbergs had their own appraisal, which came in at $440,000.00. The Heflins' loan officer, however, said that the bank would not loan the Heflins more than the home's appraised value. The Heflins told the Brackelsbergs about their inability to obtain financing and backed out. The Heflins acknowledged that they never completed a loan application.

On the undisputed facts, the Heflins were in breach of this unambiguous contract. The Heflins agreed to buy this house if a bank would loan them $445,000.00. Their obligation was not contingent on the Brackelsbergs' home appraising for a particular amount. Their obligation, moreover, was not contingent on the loan being tied exclusively to this property. They did not complete a loan application, an important omission. For if the Heflins had filled out an application, then their loan officer would have learned what discovery in this case revealed: the Heflins had a $750,000.00 unsecured line of credit with the bank, a substantial yearly income, and a net worth of several million dollars. The other-financing option chosen by the Heflins was wide open: it unambiguously made the sale contingent only on them securing some kind of bank financing, not just a typical mortgage, for the purchase price. On the undisputed facts, the circuit court correctly granted the Brackelsbergs' judgment as a matter of law on breach.

## II.

The Heflins also argue that the circuit court erred by allowing the Brackelsbergs to seek actual damages. The parties' contract gave the Brackelsbergs a choice. "If Buyer fails to fulfill his obligations under

this Real Estate Contract ... the Earnest Money may, at the sole and exclusive option of the Seller, be retained by the Seller as liquidated damages. Alternatively, Seller may return the Earnest Money and assert all legal or equitable rights which may exist as a result of Buyer breaching this Real Estate Contract." The Heflins contended that the Brackelsbergs elected liquidated damages by sitting on the $5,000.00 earnest money for more than a year. The circuit court, however, awarded actual damages—the Brackelsbergs got to keep the $5,000.00 earnest money and received a judgment for $22,500.00 more—plus attorney's fees.

■ The parties argue this point as an election of remedies. This is, we conclude, the right idea but the wrong label. This is not the paradigm case on a land contract where the election is either damages or specific performance. *E.g.*, *Bigger v. Glass*, 226 Ark. 466, 290 S.W.2d 641 (1956). Instead, the Brackelsbergs had an election within their damages remedy: liquidated or actual damages. Though we have not located any authority directly on point, we conclude that the same general principles apply to an election within a remedy as to an election between remedies.

■ "[I]f a party has two or more inconsistent remedies on a single cause of action, only one remedy may be ultimately pursued and only one remedy satisfied." HOWARD W. BRILL, ARKANSAS LAW OF DAMAGES § 2:9, at 32 (5th ed.2004); *see also Cater v. Cater*, 311 Ark. 627, 630–31, 846 S.W.2d 173, 175 (1993). A party may—intentionally or unintentionally—elect his or her remedy out of court. BRILL, *supra* § 2:10, at 37–38. The Brackelsbergs cite cases where the election occurred in a pleading or other court paper. *E.g.*, *Sutterfield v. Burbridge*, 223 Ark. 854, 856, 268 S.W.2d 900, 901–02 (1954). But the precedent makes clear that acts outside of court will suffice. *E.g.*, *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 610–11, 864 S.W.2d 817, 828 (1993). Moreover, "[t]he passage of time or delay in selecting available options may constitute an election." BRILL, *supra* § 2:10, at 38. Timeliness is a fact question. Howard W. Brill, *The Election of Remedies Doctrine in Arkansas*, 37 ARK. L.REV. 385, 400 (1983); *see also Herrick v. Robinson*, 267 Ark. 576, 587, 595 S.W.2d 637, 644 (1980).

■ The Brackelsbergs first argue that the Heflins' election argument is not preserved because the Heflins did not assert it in response to the Brackelsbergs' counterclaim. We disagree. Election was in this case from the start. The Heflins pleaded it in their complaint and first amended complaint. The Brackelsbergs then petitioned to interplead the earnest money and counterclaimed for actual damages at the same time. The Heflins did not file a reply to the Brackelsbergs' counterclaim, *see* Ark. R. Civ. P. 7(a), but instead filed a response to the Brackelsbergs' interpleader petition. There the Heflins again alleged that the Brackelsbergs elected liquidated damages as their sole remedy. Thus the parties joined, briefed, and argued the election issue in the circuit court. And that court rejected this defense by ruling for the Brackelsbergs. We see no waiver.

When everyone signed this contract, the Heflins gave the Brackelsbergs $5,000.00 earnest money. The contract said this money should be deposited with the "Listing Agent Firm." But there was no listing agent or real estate firm involved in this sale. The Brackelsbergs deposited the earnest money into their personal bank account. When the Heflins backed out of the deal, Mr. Heflin asked Mr. Brackelsberg about the earnest money, but they reached no conclusion. About five months later, the Brackelsbergs sold their house

to other buyers. The earnest-money issue sat for more than a year until the Heflins sued to get the $5,000.00 back and the Brackelsbergs counterclaimed for all actual damages. At one of the depositions in the case, the Brackelsbergs tried to refund the earnest money to the Heflins. They refused to accept it. As we have noted, the Brackelsbergs also filed an interpleader petition asking to deposit the money with the clerk. The circuit court, however, denied that petition.

■ The facts about the earnest money were undisputed. But "[a]fter reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts." *Sykes*, 373 Ark. at 240, 283 S.W.3d at 213. This is, we conclude, the situation here on damages. Reasonable minds could reach different conclusions about whether the Brackelsbergs' handling of the earnest money—not returning it when the deal collapsed and keeping it for more than a year thereafter—established an election to keep the $5,000.00 as liquidated damages and move on. We therefore reverse and remand for a trial on damages.

■ The Heflins make another argument about damages. They contend that the Brackelsbergs were not entitled to any damages at all because they failed to notify the Heflins of their breach so that the Heflins would have had the opportunity to perform. The Heflins' authorities, however, are cases where time was not of the essence in a land-sale contract. *Valley Planing Mill Co. v. Lena Lumber Co.*, 168 Ark. 1133, 1141, 272 S.W. 860, 863–64 (1925); *Adams v. Rhodes*, 143 Ark. 172, 176–77, 220 S.W. 29, 30 (1920). In that kind of situation, a notice requirement is both fair and sound: it creates the opportunity, and the deadline, for a curing performance. *Valley Planing Mill Co.*, 168 Ark. at 1141, 272 S.W. at 864–65; *Adams*, 143 Ark. at 176–77, 220 S.W. at 30. Here, the Heflins and the Brackelsbergs agreed in paragraph 27 of their contract that time was of the essence. So these older cases do not make lack of notice a nuclear defense in this dispute. Given the Heflins' unequivocal and undisputed refusal to consummate this deal, and the parties' clear agreement about the importance of all the contract's undisputed deadlines, the Heflins were not entitled as a matter of law to some additional notice.

## III.

■ The prevailing party in a breach of contract action may be entitled to a reasonable attorney's fee. Ark.Code Ann. § 16–22–308 (Repl.1999). "[T]he prevailing party is determined by who comes out 'on top' at the end of the case." *Marcum v. Wengert*, 344 Ark. 153, 162, 40 S.W.3d 230, 236 (2001). Whether the Brackelsbergs or the Heflins will come out on top is a decision for the end of this case. We therefore vacate the attorney's-fee award. The circuit court should exercise its informed discretion about whether to award fees, and if so, in what amount, when all is said and done in this case. 344 Ark. at 160, 40 S.W.3d at 234–35.

There are two other loose ends. First, in their cross-appeal, the Brackelsbergs challenge the circuit court's refusal of prejudgment and post-judgment interest. Prejudgment interest depends on whether the amount of any damages is ascertainable. *E.g., Sims v. Moser*, 373 Ark. 491, 509, 284 S.W.3d 505, 519–20 (2008). And post-judgment interest in any contract case is a matter of statute. Ark.Code Ann. § 16–65–114(a) (Supp.2009). Our reversal and remand for a damages trial moots the interest issues for now. They are for the circuit court to revisit, if need be, after that trial.

Second, the Brackelsbergs have moved this court for $3,198.80 in costs and attorney's fees incurred for supplementing the Heflins' abstract and addendum. Ark. Sup.Ct. R. 4–2(b)(*l*). This kind of award is appropriate only when the supplemental materials are "essential to a full consideration of the issues raised by the direct appeal." *Arkota Industries, Inc. v. Naekel,* 274 Ark. 173, 177, 623 S.W.2d 194, 196 (1981); *see also Lackey v. Mays,* 103 Ark. App. 70, 81, 286 S.W.3d 193, 200 (2008). The Heflins acknowledge that they inadvertently left the Brackelsbergs' summary-judgment motion and related brief out of the addendum. These are essential documents. The depositions were part of the summary-judgment record. The Heflins should have abstracted them, and indeed we have relied on them in deciding the case. With these exceptions, the material in the Brackelsbergs' supplemental abstract and supplemental addendum was either helpful or unnecessary, but not essential. For example, the more-complete abstract of the hearings was helpful. But the documents related to the Heflins' cross-motion for summary judgment, which was denied and not appealed, were unnecessary. *Arkota Industries, Inc.,* 274 Ark. at 177, 623 S.W.2d at 196.

Pursuant to Arkansas Supreme Court and Court of Appeals Rule 6–7(c), we assess appeal costs to address the Brackelsbergs' motion and reflect our decision on the merits. Both the Heflins and the Brackelsbergs have prevailed in part on appeal. Each side should therefore bear its own brief costs. The clerk shall tax one-half of the cost of the record ($593.10) and one-half of the filing fee ($75.00) against the Brackelsbergs, less the $268.10 we award the Brackelsbergs on their motion for supplementing the abstract and addendum. The net costs awarded in favor of the Heflins are therefore $400.00.

Affirmed in part; reversed and remanded in part; fee award vacated; motion granted.

ROBBINS and GLOVER, JJ., agree.

### SUPPLEMENTAL OPINION

Our opinion states that the Heflins did not file a reply to the Brackelsbergs' counterclaim. 2010 Ark.App. 261, at 6, 374 S.W.3d 755, 758. We were mistaken. The Heflins have moved to supplement the record on appeal with a copy of their reply, which they styled as an answer. It turns out that the Heflins filed this pleading with the circuit clerk, but it was inadvertently omitted from the record on appeal. At our Clerk's request, the Heflins have also tendered a certified copy of this pleading.

While the motion might seem like overkill, it is probably prudent in the circumstances. We reversed and remanded in part. On remand, the circuit court must follow the letter and spirit of our decision—even if that decision contains a mistake. *Pro–Comp Management, Inc. v. R.K. Enterprises, LLC,* 366 Ark. 463, 466, 237 S.W.3d 20, 23 (2006); *Mellinger v. Mellinger,* 26 Ark.App. 233, 236, 764 S.W.2d 52, 53 (1989). This law, and our uncorrected statement, set the table for some unnecessary procedural wrangling: an argument that the Heflins were, according to our opinion, in default on the Brackelsbergs' counterclaim. Ark. R. Civ. P. 55(a) & (d). There is no good reason for the parties or the circuit court to waste time on that issue.

We grant the motion and deem the record supplemented. We also hereby correct our original opinion. The Heflins filed a timely reply, styled as an answer, to the Brackelsbergs' counterclaim. That pleading, however, did not assert the Brackelsbergs' election of damage remedies. For the reasons given in our original

opinion, that omission was not fatal to the Heflins' election defense because election was joined in other pleadings, briefed, argued, and decided below.

A final word to the bar. Before briefing the case, counsel should check the appeal record carefully. Make sure that it is complete and correct. Minor defects can often be cured by stipulation between counsel. If necessary, move to correct omissions in the record, or move to remand and settle it, as soon as possible after filing the record on appeal. (One such motion was filed early in this case.) Checking, and if need be correcting, the record before the briefing will help the appellate court get the opinion right in every particular the first time around.

ROBBINS and GLOVER, JJ., agree.