## Richmond

# LINDBERG HUMMEL
### v.
# COMMONWEALTH OF VIRGINIA

August 31, 1978.

Record No. 771298.

Present: All the Justices.

William H. Ralston, Jr.; Robert G. Dinsmore, Jr. (Moore, Jackson, Graves and Ralston; Hatmaker, Dinsmore & Stables, on brief for appellant.

Burnett Miller, III, Assistant Attorney General (Marshall Coleman, Attorney General, on brief) for appellee.

HARMAN, J., delivered the opinion of the Court.

Lindberg Hummel (Hummel or defendant) was convicted in 1975 of grand larceny by receiving stolen property. Upon appeal to this court, we reversed the conviction and remanded the case for a new trial. 217 Va. 548, 231 S.E.2d 216 (1977). Upon retrial, Hummel was again convicted by a jury of the offense charged and his punishment was fixed at five years in the penitentiary. We awarded defendant a writ of error to review his claim that the trial court erred in not suppressing certain evidence for alleged prosecutorial and police misconduct, and defendant's further claim that action taken by the prosecutor and police deprived him of his constitutional right to counsel.

In November, 1976, while Hummel's first appeal was pending, Anthony Thomas Terry (Terry), a convicted felon who was the key

witness against Hummel at his first trial, advised Detective Lieutenant Hubert B. Meyers (Meyers or detective) of the Harrisonburg Police Department that Terry had been approached by defendant's brother, Woodrow Hummel, and offered a bribe to change his testimony against defendant. The detective, after consultation with the Commonwealth's Attorney, arranged with Terry to monitor and record telephone calls between Terry and Woodrow Hummel. Two conversations between Terry and Woodrow Hummel on November 14, 1976, were recorded. On the same day, at Woodrow Hummel's suggestion, Terry called a telephone number given to him by Woodrow Hummel and spoke with the defendant. This telephone conversation and several calls the following day between Terry and the Hummels were also monitored and recorded by Meyers.

Our opinion reversing Hummel's first conviction was announced on January 14, 1977. On January 27, 1977, in response to a message left by Hummel with Terry's mother, Terry again called the defendant from a monitored telephone at the police station. In this conversation Hummel offered Terry a bribe to change his testimony. The following excerpt is illustrative of this conversation:

\* \* \*

"Hummel: In other words, you know damn well if you go back to Court all in the hell you have to do is say you don't remember.

"Terry: Yeah.

"Hummel I mean that ain't no damn crime not to remember.

"Terry: No.

"Hummel: Anyway, I tell you what I'll do.

"Terry: Yeah.

"Hummel: In other words if you go in there [the attorneys' offices] just go in there and talk to [one of my attorneys].

"Terry: Just talk to him?

"Hummel: Yeah, I'll give you $50 whenever you talk to him then if they kick the thing out, I'll give you some more."

\* \* \*

It should be noted that Hummel never made a direct admission of guilt in any of his conversations with Terry.

Pursuant to arrangements made on January 27, Terry was to go to a shoeshop operated by Jimmy Shaffer near the offices of Hummel's attorneys, and to the attorneys' offices on the morning of January 28. Before he kept these engagements, the police concealed a radio transmitter on Terry's person. By means of this device the police monitored and recorded conversations between Jimmy Shaffer and Terry, and between one of Hummel's attorneys and Terry. The conversations between Shaffer and Terry establish that Shaffer paid the $50 promised by Hummel to Terry after Terry had been interviewed by Hummel's attorney. A transcript of the meeting between Terry and one of Hummel's attorneys reveals only a routine interview of a prospective witness, and there is not even a suggestion of misconduct or impropriety on the part of the attorneys.

Prior to March 17, 1977, the date set for Hummel's retrial, the Commonwealth's Attorney revealed the existence of the recorded conversations to Hummel's attorneys and furnished them with a transcript of the recordings. Upon motion of Hummel's attorneys, with Hummel's agreement and consent, they were permitted to withdraw because they felt their continued representation might possibly result in prejudice to the defendant. Hummel promptly obtained other counsel, who continue to represent him, and his trial was postponed for ample time for the attorneys to prepare for trial.

At trial, a tape recording of the conversation of January 27, excerpted above, between Lindberg Hummel and Terry was admitted in evidence and played for the jury over objection of defense counsel. The jury, in fact, heard the tape recording twice, once during trial and once, at the jury's request, during deliberations. The major thrust of defendant's argument on appeal is the alleged error in the trial court's refusal to suppress the tape recording.

The defendant argues that *Massiah v. United States*, 377 U.S. 201 (1964), requires reversal of his conviction. Massiah, indicted on narcotics charges, had retained counsel at the time police secretly recorded a conversation between a cooperative co-defen-

dant and Massiah in which Massiah made incriminating statements about his involvement with narcotics in the pending case. The United States Supreme Court, limiting its decision to Sixth Amendment grounds, held that:

". . petitioner was denied the basic protections of that guarantee [Sixth Amendment right to counsel] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." 377 U.S. at 206.

Hummel contends that he had been indicted, had retained an attorney, and was victimized by the state acting through a willing accomplice in precisely the same fashion as Massiah. Further, Hummel asserts that the exclusionary rule of *Massiah*, recently reaffirmed in *Brewer* v. *Williams*, 430 U.S. 387 (1977), is buttressed by this Court's decision in *Cooper* v. *Commonwealth* , 205 Va. 883, 140 S.E.2d 688 (1965), wherein we held certain statements made in the absence of counsel after indictment inadmissible.

In order to distinguish *Massiah* and related cases from the present controversy, the Commonwealth has two arguments. First, it is urged that the Harrisonburg Police were investigating an entirely new and different crime, bribery, rather than, as in *Massiah* , that with which the defendant already stood accused.

The Commonwealth's second argument is that it acted legally in following up Terry's complaint of attempted bribery by an investigation aimed at ferreting out new and further criminal activity. It is asserted that, as to the possible bribery charge, this was investigatory and not accusatory, leaving the Sixth Amendment right to counsel objection wanting. *Escobedo* v. *Illinois*, 378 U.S. 478 (1964). Thus, it is argued, while acting pursuant to its obligations to bring bribery to light, any information legally obtained would not be suppressible in any other trial.

While *Massiah* and its progeny stand for the proposition that the Sixth Amendment right to counsel proscribes surreptitious interrogation by a government agent of an accused about an offense with which the accused has already been charged, this

exclusionary rule does not apply to information legally obtained in the investigation of a new and different criminal offense initiated by the accused while awaiting trial.

We note that Hummel initiated the conversation, later heard at trial, by requesting that Terry contact him. It is clear from the recording that Hummel sought to frustrate the prosecution of the grand larceny charge by tampering with the testimony of Terry, his principal adversary witness. There are few actions more indicative of guilt than those of a person professing innocence while attempting to secure a substantial change in testimony known to be damaging. In this context, there is no strength to the argument that the tape recording could be used, if at all, only at a subsequent trial for bribery. The facts of this case mandate a rule different from *Massiah*, namely, where the accused illegally attempts to subvert his prosecution by bribery, he has neither a right to notice of the investigation of the alleged bribery nor, under the Sixth Amendment, a right to presence of his attorney. *See Hoffa* v. *United States*, 385 U.S. 293 (1966); *United States* v. *Osser*, 483 F.2d 727 (3rd Cir. 1973).

To inform Hummel or his counsel that a bribery investigation was underway would thwart and frustrate the police and prosecution from gathering evidence at the only practical time they could gather that information. To adopt such a rule would place one already indicted or accused of a criminal offense in the favored position of knowing that the police could not investigate his further criminal activity without first giving him notice of their intention to make such an investigation.

The Constitution demands that an accused have the effective assistance of counsel. At a minimum, this fundamental right attaches at the time the accused is charged or at the time of custodial detention. *Escobedo* v. *Illinois, supra; Miranda* v. *Arizona*, 384 U.S. 436 (1966). While we protect and uphold this right, it does not extend to the investigatory stages of a crime, when the suspect has neither been charged nor detained for that offense. We hold that evidence legally obtained in such an investigation will not be suppressed merely because the defendant, at the time of such investigation, already stood accused of another separate offense.

■ We will now look at the defendant's claim that the police, by monitoring and recording the interview between Terry and one of Hummel's attorneys, deprived him of his constitutional right to counsel. As we noted earlier, a transcript of that interview disclosed nothing more than a routine interview by counsel of a prospective witness. Counsel's decision to withdraw from Hummel's defense was made with Hummel's acquiescence and consent, because the attorneys were fearful that their continued representation might somehow result in prejudice to the defendant. Hummel promptly obtained other counsel, who have ably represented him since that time. The Constitution does not guarantee that the defendant will be represented by a particular attorney. It does guarantee that he will be adequately represented by a competent attorney. Since the record discloses that defendant's present counsel have provided that quality of representation, we find no merit in this claim of the defendant.

Finding no reversible error, we will affirm the judgment of the trial court.

*Affirmed.*