Jack L. GUSTAFSON, Sr. *v.* STATE of Arkansas

CR 78-209                                   590 S.W. 2d 853

Opinion delivered December 3, 1979
(In Banc)

280

*Duncan & Davis*, by: *A. Wayne Davis* and *Phillip J. Duncan*, for appellant.

*Steve Clark*, Atty. Gen., by: *Joseph H. Purvis*, Deputy Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Jack L. Gustafson, Sr. was convicted in the Independence County Circuit Court of burglary, attempted theft and soliciting capital murder. He was sentenced to a total of 50 years imprisonment.

He raises numerous issues on appeal. We find prejudicial error was committed and reverse his conviction and remand the matter for a new trial. Our discussion of some of the issues will be limited since there will likely be a new trial.

Gustafson was charged with burglarizing a National

Guard Armory and attempting to steal weapons from that armory. He was also charged with soliciting the murder of Ray Seeley who was seeing his former wife.

Law enforcement officials testified that they learned that Gustafson had made statements while he was in the Independence County Jail, on other charges, that he had automatic weapons for sale and that he planned to burglarize a National Guard Armory. A federal agent wired for sound was placed in the cell with Gustafson. He gave Gustafson a telephone number in Louisiana to call in the event Gustafson was interested in selling the automatic weapons and hiring somebody to commit the murder.

After Gustafson got out of jail on bond he made the telephone call. The undercover agent then met Gustafson at the Red Bird Truck Stop in Batesville. At this meeting a tape recording was made of the conversation. It related to the burglary of the armory and the murder of Ray Seeley and was decidedly incriminating. It was admitted into evidence over the objections of the appellant.

On October 26th, the night after the conversation at the Red Bird Truck Stop, the appellant was shot outside the National Guard Armory in Batesville. Gustafson had a gun and the State offered evidence that a pry bar was in his possession at the time he was shot. There was evidence that the armory had been entered with the use of the pry bar. There was no evidence that any weapons were taken.

The first allegation of error is that any conversations with Gustafson in the jail were obtained in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution as well as Ark. Const., art. II, § 8. Furthermore, the appellant argues that the tape recording made at the Red Bird Truck Stop should have been suppressed as tainted by these violations. The State did not offer as evidence any statements made by Gustafson while he was in jail, but only this later recording. Based on the record before us, all these arguments are without merit. Gustafson's charges in this case were unrelated to those for which he was in jail and there was no requirement that he be

advised of his rights by the undercover agent. *Miranda* v. *Arizona*, 384 U.S. 436 (1966) does not apply to this situation. Neither does *Massiah* v. *U.S.*, 377 U.S. 201 (1964) prohibit the use of the tape. *Massiah* involved gathering information against a defendant through a "bugged" informant. Massiah had already been charged with the crime being investigated and had a lawyer in connection with that crime. The Supreme Court of Virginia in *Hummel* v. *Commonwealth*, 219 Va. 252, 247 S.E. 2d 385 (1978) considered evidence not unlike that obtained against Gustafson. The court distinguished the *Massiah* case:

> While *Massiah* and its progeny stand for the proposition that the Sixth Amendment right to counsel proscribes surreptitious interrogation by a government agent of an accused about an offense with which the accused has already been charged, this exclusionary rule does not apply to information legally obtained in the investigation of a new and different criminal offense initiated by the accused while awaiting trial. *Hummel* v. *Commonwealth*, 219 Va. 252, 247 S.E. 2d 385, 388 (1978).

There was nothing unreasonable in the fact that an undercover agent was introduced in Gustafson's cell in connection with conduct that was unrelated to his incarceration. In *U.S.* v. *White*, 401 U.S. 745 (1971), the Court said:

> If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case. *Id* at 752.

It was not disputed that Gustafson made a telephone call on his own to the undercover agent after he got out of jail. This fact belies the appellant's argument of inducement.

The appellant argues it was error for the prosecuting attorney's "investigator", a material witness, to remain in the courtroom although all other witnesses had been excluded from the courtroom during the trial. The appellee argues that the witness was properly allowed in the court-

room by virtue of Subsections 2 and 3, Rule 615. The Uniform Rules of Evidence, Rule 615, reads:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exlusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

It may have been only harmless error in this case for the trial judge to permit the investigator to remain in the courtroom. The investigator testified after the first witness had been called for the State and his testimony did not appear to relate in any way to the testimony of the first witness. There is no way the "investigator" in this case could qualify as an exception by Rule 615(2). The State did not make a strong case that the presence of the "investigator" was essential to the conduct of the trial. In a criminal case it was not contemplated that such a practice would be routine.

Rule 615, Uniform Rules of Evidence, replaces Ark. Stat. Ann. § 43-2021 which provided for no exception to the rule in a criminal case. An accused under that statute could require all State witnesses be excluded. Rule 615 is the same as the federal rule and its purpose can best be learned by studying the recommendations made to Congress.

Weinstein quotes extensively from Senate Judiciary Committee statements in connection with Rule 615(3), which sheds some light on the intent of the United States Congress in adopting the same rule for federal courts:

> Many district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in — he always has the client with

him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty. *Yet, it would not seem the Government could often meet the burden under rule 615 of showing that the agent's presence is essential* . . . . [Emphasis added.] Report, Committee on the Judiciary, United States Senate, 93rd Cong., 2d Sess., on the Federal Rules of Evidence, p. 26 (1974). As quoted in *Weinstein, Evidence,* par. 615[01].

The Advisory Committee's Notes on Rule 615(3) read:

The category contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation. See 6 Wigmore § 1841, n.4. As quoted in *Weinstein, Evidence,* par. 615[01].

The exclusionary rule is considered as effective as cross-examination in serving the court to garner the truth. It should not be easily circumvented. On a retrial, unless the prosecuting attorney can demonstrate that his investigator is actually essential to the trial of the case, the investigator should be treated like any other witness.

The appellant argues that the court should have granted a continuance. The attorneys for Gustafson were appointed seven days before the trial. The record is not clear whether the attorneys pursued the matter in a timely manner. The attorneys had been negotiating with the prosecuting attorney about this case for some time before their appointment. A motion for a continuance was not filed until the day before the trial. It is unlikely that such a matter will occur on a retrial.

The prosecuting attorney, over the objections of Gustafson, was permitted to require Gustafson to demonstrate to the jury certain actions of his outside the armory on the

night in question. Gustafson was required to put on the holster and gun that was found in his possession and demonstrate to the jury his actions just before he was shot. We find nothing prejudicial in this demonstration, because Gustafson had taken the witness stand and testified as to what happened; it was relevant to the issue of his credibility, whether he or the officers were telling the truth about Gustafson's actions and conduct as he exited the armory. The precise question was whether Gustafson had his gun in hand.

Gustafson argues that he was entitled to separate trials on the charges of burglary and conspiracy. We find no merit at all to this argument since all the charges were related and grew out of the same conversation and course of conduct. Rules of Crim. Proc., Rule 22.2.

The appellant argues his right to cross-examine Sgt. Bob Reynolds and John Ford was improperly limited by the trial court. There is some merit to this argument. At times counsel for appellant was unduly repetitious, a factor no doubt in the trial court's occasionally limiting cross-examination. This error will no doubt not arise on a new trial. A cross-examiner is given wide latitude and cannot be unduly restricted in eliciting facts which affect a witness' credibility. *Haight* v. *State*, 259 Ark. 478, 533 S.W. 2d 510 (1976).

When Gustafson took the witness stand, as a witness in his own behalf, he was asked by the prosecuting attorney about previous criminal convictions and previous misconduct. The trial judge permitted some of the questions over the objections of Gustafson's lawyer.

There are circumstances where it is possible for the State to introduce into a criminal trial evidence that the defendant has committed crimes unrelated to those which he is charged. One circumstance is in its case in chief, where, in very limited circumstances, the State may offer evidence of other offenses. Ordinarily, such evidence is not permitted. It is prejudicial by nature and should only be used against a defendant in a criminal action in rare cases. See *Alford* v. *State,* 223 Ark. 330, 266 S.W. 2d 804 (1954). Another circumstance is when a defendant in a criminal case takes the

witness stand in his own behalf. His credibility becomes an issue and the State may, under certain circumstances, test that credibility by asking the defendant if he has been convicted of certain crimes or if he is guilty of certain misconduct. *Moore* v. *State*, 256 Ark. 385, 507 S.W. 2d 711 (1974). Gustafson was cross-examined both about previous convictions and about acts of misconduct.

First, Gustafson was asked on cross-examination if he had been convicted of burglary and larceny in Sharp County, Arkansas. He admitted that he had been. It does not appear from the record that this question was improper under Uniform Rules of Evidence, Rule 609. Rule 609 permits such a question only if the crime was punishable by death or imprisonment in excess of one year or if the conviction involves dishonesty or a false statement regardless of the punishment. The trial judge must determine if the probative value of the question outweighs its prejudicial effect. There are other restrictions, for example a 10-year time limit and a provision regarding the effect of a pardon. If a defendant denies being convicted of such a crime, the conviction can be proved by extrinsic evidence.

Next, he was asked if he was not, in fact, guilty of possessing several thousand dollars worth of CB radio equipment which had been stolen from Jay's CB Shop at Batesville. The trial judge sustained an objection to this question. He was then asked if he was not guilty of knowingly possessing a 4-wheel drive Chevrolet pick-up truck which had been stolen from Richard Thomas at Arkansas College in Batesville. Gustafson refused to answer this question, claiming his privilege under the Fifth Amendment. The judge ordered him to answer and he did. These two questions about Gustafson's previous misconduct, because they were not related to convictions but to misconduct, are governed by Rule 608(b) of the Uniform Rules of Evidence which reads:

> (b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by

extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Rule 608(b) of the Uniform Rules of Evidence changes Arkansas law. Before the adoption of the Uniform Rules it was proper to ask on cross-examination if a defendant was guilty of most any kind of felony. In *Butler* v. *State,* 255 Ark. 1028, 504 S.W. 2d 747 (1974), we reviewed some of our prior decisions which had held that it was proper in certain circumstances to ask a defendant if he was guilty of robbery, interstate transportation of stolen property, rape, larceny or assassination. The rationale of permitting such a question was that a person committing such a crime might be prone to lie.

There is no doubt that Rule 608(b) was intended to restrict the use of such evidence, especially in a criminal case. Our rule is based on the federal rule and most commentators take the position that Rule 608(b) should be interpreted restrictively. See *McCormick, Evidence,* § 42 (2d ed. 1972); *Weinstein, Evidence,* § 608[05] (1978).

We read Rule 608(b) to provide that the trial court may, if it finds good faith and that the probative value of such information outweighs the prejudicial effect, allow such a question about certain offenses. The most important change is that the question must be concerning misconduct which relates to truthfulness or untruthfulness. That is, one element of the offense alleged must be an act of dishonesty. The question cannot regard misconduct which has no relation at all to honesty. *Weinstein, supra,* indicates that misconduct

relating to truthfulness would include forgery, perjury, bribery, false pretense and embezzlement. Obviously, some misconduct would not bear on truthfulness. For example, murder, manslaughter or assault do not *per se* relate to dishonesty. Burglary and breaking and entering would not be such misconduct unless the crime involved the element of theft. Ark. Stat. Ann. §§ 41-2002, 41-2203. We believe that theft, as it is defined in the Arkansas Criminal Code, involves dishonesty. Ark. Stat. Ann. § 41-2201, *et seq.*

We are aware that the use of such information can be highly prejudicial to a defendant in a criminal case and that the use of such information may well be abused. No doubt Rule 608(b) was designed to curb this possible abuse. We find three conditions on the use of such information. First, the question must be asked in good faith. This has always been our rule. *Balentine* v. *State,* 259 Ark. 590, 535 S.W. 2d 221 (1976); *Moore* v. *State, supra,* and *Butler* v. *State, supra.* This means the court may require evidence of good faith before it permits such a question to be asked; that is, that the questioner must have credible knowledge that the offense has been committed, not just information based on rumor or speculation. Next, the court in its discretion should decide if the probative value of the question outweighs the prejudicial effect of such a question. Rule 403, Uniform Rules of Evidence, provides for excluding relevant evidence if its prejudicial effect outweighs its probative value. Finally, of course, the misconduct must relate to truthfulness or untruthfulness and that character trait.

The questions asked of Gustafson relate to misconduct which is defined as theft by receiving in Ark. Stat. Ann.§ 41-2206.

The prosecuting attorney asked Gustafson two questions: Both were, had he not, in fact, knowingly possessed certain stolen property, and the prosecuting attorney identified the property, time and place in both questions, as he should have. Those were, on their face, proper questions. The offense of theft by receiving requires that one *receive, retain* or *dispose* of stolen property knowing *that it was stolen or having good reason* to believe that it was stolen.

Ark. Stat. Ann. § 41-2206. The witness should be able to answer such a question by a simple yes or no. The State may not go beyond that answer, as it may in the case of a conviction, and prove the misconduct by extrinsic evidence.

In the case of *State* v. *Miller,* 92 N.M. 520, 590 P. 2d 1175 (1979), the New Mexico Court dealt with the identical problem. In the *Miller* case there were some fourteen questions asked of the defendant relating to his guilt of various crimes. The Court said:

> . . . The only purpose of the questions was to test defendant's credibility. *State* v. *Coca, supra.* The crimes involved in the questions could not be proved by extrinsic evidence. Evidence Rule 608(b). Defendant answered each of the questions in the negative.
>
> What then was the probative value of the questions? There was none. Under the balancing test required by Evidence Rule 403, the trial court abused its discretion in permitting the questioning because the questions were prejudicial and, in light of the answers, there was no probative value.
>
> We do not hold that a question under Evidence Rule 608(b), which asks for an admission concerning a felony, can never be asked. Our holding is that any one of such questions is prejudicial, see *State* v. *Rowell,* 77 N.M. 124, 419 P. 2d 966 (1966) and, if there is nothing indicating the question has probative value on the question of credibility, it is an abuse of discretion to permit the question. When the question is under Evidence Rule 608(b), a prosecutor, who seeks to have a defendant make an admission concerning a felony when there has been no conviction, hazards a reversal absent a showing of probative value because of the prejudicial nature of the question.

We arrive at the same conclusions.

In *Cox* v. *State,* 264 Ark. 608, 573 S.W. 2d 906 (1978), two statements were made which are inconsistent with this

opinion. It may have been the question asked in *Cox* was improper for other reasons, but our opinion does not show that. We said in *Cox* that it was improper to ask a defendant if he had not, in fact, committed a robbery on the same day of the offense with which he was charged. We said that the question itself was improper and in that regard we were mistaken. Such a question would not be impermissible under Rule 608 if it were asked in good faith and permitted in the discretion of the judge because robbery is an act of dishonesty.

We were also mistaken in *Cox* if we left the impression that a negative answer to an improper question results in no prejudicial error. There is no doubt that such a question harms a defendant's case. When it is proper, about a type of misconduct that is relevant, it is allowed only because it is relevant to the determination of the credibility of the defendant. But to say that a negative answer always removes the prejudice in every case goes too far. Prejudicial error may result whether the question is properly phrased or not. We cannot predict whether prejudice can be removed in every case.

The trial court sustained an objection to the first question regarding the stolen CB radios. For what reason we cannot say. Then the trial court required Gustafson to answer the question about the 4-wheel drive truck. Gustafson claimed his privilege against self-incrimination regarding this question. The trial court, clearly in error, ordered Gustafson to answer the question. Rule 608(b), specifically the last paragraph, provides that the privilege against self-incrimination is preserved in such circumstances. This was prejudicial error that requires us to reverse the judgment of the court.

The difficult question for us is whether both of these questions may be asked of Gustafson at a retrial if he takes the witness stand. That presumes too much. First of all the judge sustained an objection to the first question for some reason finding it improper. No doubt the trial judge had good reasons for sustaining that objection. We would not presume that those reasons no longer exist, although they might.

Obviously that question should not be asked again in this case unless the trial judge in advance makes a decision that it is a proper question, asked in good faith and its probative value outweighs its prejudicial error. The second question, also on its face a proper question, must withstand the same scrutiny by the trial judge whose discretionary judgment we cannot predict. That would, no doubt, have some bearing on possible prejudice. If both questions were deemed improper by the trial judge, it would be difficult to say prejudicial error was not committed by the asking alone.

We cannot predict for future cases what questions will or will not be so improper as to require a new trial. We do not intend to be so restrictive in our application of Rule 608(b) as to remove a valuable tool in garnering the truth. However, we do want it made clear that the use of such evidence in a criminal case creates a real hazard of a mistrial or a reversal. Prosecuting attorneys would be well advised to procure a ruling from the trial judge before asking such quetions before a jury.

Reversed and remanded.

HARRIS, C.J., not participating.

BYRD, J., concurs.

HOLT, J., dissents.

FRANK HOLT, Justice, dissenting in part. I would adhere to the views expressed in Cox v. State, 264 Ark. 608, 573 S.W. 2d 906 (1978), which is overruled today. The majority's view meets the prophecy of Weinstein when he wrote: ''Such an approach paves the way to an exception which will swallow the rule.'' Rule 608(b) was not meant to include every act of dishonesty but only those going to the veracity of the witness.