Cite as 2025 Ark. 134

# SUPREME COURT OF ARKANSAS

**No.** CR–24–374

| | |
|---|---|
| SANTIAGO VASQUEZ, JR. | **Opinion Delivered:** September 25, 2025 |
| APPELLANT | |
| | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28CR–19–227] |
| V. | |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE RANDY F. PHILHOURS, JUDGE |
| | AFFIRMED; COURT OF APPEALS OPINION VACATED. |

## BARBARA W. WEBB, Justice

Santiago Vasquez, Jr., was convicted in a Greene County jury trial of five counts of rape.[1] He received an aggregate sentence of 960 months' imprisonment in the Arkansas Division of Correction. However, the Arkansas Court of Appeals reversed and remanded Vasquez's convictions. *Vasquez v. State*, 2025 Ark. App. 65, 704 S.W.3d 886. On April 24, 2025, we granted the State's petition for review.

Upon the grant of a petition for review following a decision by the court of appeals, we review the case as though the appeal was originally filed with this court. *Armer v. State*, 326 Ark. 7, 929 S.W.2d 705 (1996). On appeal, Vasquez argues that the circuit court erred

---

[1]This was Vasquez's third trial on these charges. He was convicted in his first trial, but the court of appeals reversed. *Vasquez v. State*, 2022 Ark. App. 328, 652 S.W.3d 586 (holding sexual-assault nurse examiner's (SANE) testimony about frequency of normal findings on sexual-assault exams and children's delay in disclosing sexual abuse exceeded permissible scope of lay testimony). However, that case was recently overruled by *Romick v. State*, 2025 Ark. 57, 709 S.W.3d 816. Vasquez's second trial ended when the jury was unable to reach a unanimous decision.

by denying his motion to suppress evidence obtained from his cell phone pursuant to a search warrant that was so facially deficient as to preclude the "good-faith" exception; and in permitting the State to question him regarding details from a prior order-of-protection case in violation of Arkansas Rules of Evidence 404(a)(1), 608, and 613. We vacate the court of appeals opinion and affirm the circuit court's order.

## I. *Denial of the Motion to Suppress*

We first consider Vasquez's argument concerning the denial of his motion to suppress the evidence seized from the search of his cellular phone. After Vasquez's arrest, a search warrant was executed, and an iPhone was discovered inside a black backpack that was located in his residence. Paragould police submitted to Greene County District Court Judge Dan Stidham an application for a warrant to search the contents of the phone.

Appended to the application for the warrant was an affidavit executed by Lieutenant Rhonda Thomas. It stated:

> FACT # 1: My name is Lieutenant Rhonda Thomas and I have been employed at the Paragould Police Department since December of 1994. I am currently assigned to the Criminal Division where I work felony cases and supervise the Criminal Division. I have extensive training and experience in working sexually oriented cases involving children.
>
> FACT # 2: On 10/30/2018 a report was received by the Arkansas Department of Human Services in reference to 10-year-old [Minor Victim] who had disclosed sexual acts perpetrated on her by Santiago Vasquez.
>
> FACT # 3: On 11/05/2018 [Minor Victim] was interviewed by a trained forensic interviewer. [Minor Victim] provided graphic details of at least [five] different acts of deviate sexual activity and identified Vasquez as the perpetrator.
>
> FACT # 4: On 02/28/2019 Vasquez was arrested and at the time of his arrest had with him a black backpack. A warrant was obtained and the backpack

2

was searched on 03/01/2019. A cell phone belonging to Vasquez was recovered.

FACT # 5: It is believed that there could be digital evidence on the phone related to the crime of rape being investigated by the Paragould Police Department.

Vasquez filed a motion to suppress the pornographic images seized during the search of his cell phone. He argued that the affidavit that Thomas executed in support of the warrant "fail[ed] to set forth particularized facts and circumstances for sufficient probable cause to search [Vasquez's] cell phone." Vasquez asserted that these facts established nothing more than "the mere fact that he had been arrested for the offense of rape" and "did not provide a sufficient nexus between the phone and the alleged rape." Accordingly, Vasquez urged the circuit court to suppress "any evidence derived from the search of his cell phone." Vasquez later filed an amended motion to suppress in which he additionally argued that "the warrant issued by Judge Stidham is an overbroad, general warrant." As such, the warrant authorized police to seize "any digital evidence recovered or related to the offense of rape being investigated by the Paragould Police Department," which was "so generalized that law enforcement searched and seized everything in the records."

The State responded that probable cause supported the search of Vasquez's cell phone, or that, alternatively, the seized evidence should not be suppressed because the executing officers acted in good faith. According to the State, it was reasonable for Judge Stidham to infer, from the facts alleged in the affidavit, that there was a nexus between the alleged rapes and Vasquez's cell phone. Regarding the good-faith exception, the State pointed out that "there has been no assertion" that Officer Robert Sexton, who executed

the warrant, "acted in bad faith," or that "Thomas misled or knowingly provided Judge Stidham with false information."

The circuit court heard oral argument on the motion to suppress on January 25, 2024. Detective Rhonda Thomas testified that she was a lieutenant over the Criminal Division in the Paragould Police Department when she applied for the search warrant for Vasquez's cell phone. She asserted that she specializes in cases involving child sexual abuse, and she has assisted several law-enforcement agencies, including the FBI, in their investigations of those crimes. Regarding the search of Vasquez's cell phone, Detective Thomas testified that she "had talked to Judge Stidham at least two times" before preparing the affidavit for the search warrant. Detective Thomas explained that it was "normal for [her] to talk with him about cases and tell him, especially when [she] [got] an affidavit for an arrest, [that] . . . if [Judge Stidham] need[s] more, [she] can give [him] more." Nonetheless, she did not specifically remember telling Judge Stidham about the pornographic images on Vasquez's cell phone, but she testified that she had "no doubt that [she] had [that] conversation." Detective Thomas also testified that she takes special care when she prepares affidavits of probable cause in cases involving minor victims, and that she is intentionally "pretty vague in [her] affidavits . . . because [she] know[s] the press is going to get [them]." She "[tries] not to put a lot of grungy details" in the affidavit but instead communicates with Judge Stidham about the information he requires for a warrant. According to Detective Thomas, her work had never been the subject of a successful suppression motion.

At the conclusion of that argument, the circuit court denied the motion to suppress. Although the circuit court found that the affidavit was insufficient, it nonetheless denied Vasquez's motion on the basis of the good-faith exception to the exclusionary rule.

Later, and without any objection from Vasquez, the circuit court allowed the State to introduce additional evidence on the suppression issue. Judge Stidham testified that he issued the warrant after receiving information directly from Detective Thomas, whom he had known in a professional capacity for twenty-four years. During that time, she had applied for search warrants from him "thousands of times." According to Judge Stidham, Detective Thomas "never" submitted misleading information. Regarding the search of Vasquez's cell phone, Judge Stidham testified that Detective Thomas called him before submitting the affidavit for the search warrant. Among other things, Thomas told him that Minor Victim (MV) stated that Vasquez had taken pictures of her on his cell phone and had shown her pictures of "what was described to me as child pornographic images." However, despite Judge Stidham's testimony, the circuit court once again denied the motion to suppress. It ruled that Detective Thomas's affidavit was deficient because it failed to provide a nexus between the cell phone and the crime, observing that it was "missing the sentence" explaining that Minor Victim (MV) had told investigators that Vasquez had shown her pornographic images that were on his cell phone. The circuit court, however, reiterated its ruling that the good-faith exception applied because "no one attempted to leave anything out to deceive," and the court had "absolutely no reason to doubt," that Detective Thomas told Judge Stidham about MV's statement before she prepared the affidavit for the search warrant.

5

On appeal, Vasquez argues that the circuit court's reliance on the good-faith exception was misplaced. He acknowledges that the Supreme Court of the United States established the good faith exception in *United States v. Leon*, 468 U.S. 897 (1984). He notes however that the *Leon* Court held that there are four circumstances in which the good-faith exception does not apply—namely (1) when the magistrate is misled by information the affiant knew to be false; (2) when the magistrate wholly abandons his detached and neutral judicial role; (3) when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

Vasquez argues that the good-faith exception does not apply here because the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable and the warrant was so facially deficient that the executing officers could not reasonably presume it to be valid. He asserts that the circuit court agreed the affidavit was deficient, finding that the affidavit did not contain a nexus between the crime and the phone. Furthermore, the officer who executed the warrant, Robert Sexton, agreed he could search the entire contents of the phone, meaning he was granted full discretion by the warrant to search and extract everything on the phone, thereby making the warrant facially deficient. Accordingly, it was erroneous for the circuit court to rule that the good-faith exception applied. We hold that the circuit court did not err in refusing to suppress the images found on Vasquez's cell phone.

We review de novo a circuit court's denial of a motion to suppress evidence based on the totality of the circumstances. *Sims v. State*, 356 Ark. 507, 511–12, 157 S.W.3d 530,

6

533 (2004). We review findings of historical facts for clear error. *Id*. The duty of this court is to simply ensure that the magistrate had a substantial basis for concluding probable cause existed. *Wagner v. State*, 2010 Ark. 389, 368 S.W.3d 914.

Rule 13.1 of the Arkansas Rules of Criminal Procedure sets out the requirements for the issuance of a search warrant:

> The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

Contrary to Vasquez's assertions, Judge Stidham had not only the concededly deficient affidavit before him but also the testimony of Detective Thomas. Detective Thomas filled in via telephone any gaps in the evidence supporting the issuance of the warrant. At the second suppression hearing, Judge Stidham confirmed that Detective Thomas told him that MV claimed that Vasquez had used his phone to photograph her and to show her pornographic images. These images were directly related to the rape charges because the images were part of Vasquez's efforts to "groom" his victim, it corroborated MV's accusations, and it showed Vasquez's depraved instinct for pedophilia. While it would

7

have been a better practice to put this information in the affidavit, it nonetheless shows that the Paragould Police had a good-faith belief that the warrant was valid. Under the totality of the circumstances, we hold that it was objectively reasonable for the police to rely on Judge Stidham's probable cause determination.

Finally, we reject Vasquez's argument that the search warrant issued by Judge Stidham was an invalid, overbroad general warrant. The warrant directed a search of the cell phone and the seizure of any digital evidence related to the rape being investigated by the Paragould Police Department. And when the warrant was issued, both the applying officer and the issuing judge had knowledge that the victim had seen child pornography on Vasquez's cell phone. In *Osborne v. State*, 495 U.S. 103 (1990), the Supreme Court stated that evidence suggests that pedophiles use child pornography to seduce other children into sexual activity, which, according to MV's allegations, was precisely what Vasquez did in his on-going sexual abuse of MV. Accordingly, we affirm the circuit court's denial of Vasquez's motion to suppress.

II. *Erroneous Admission of Testimony Concerning Orders of Protection*

We next consider Vasquez's argument concerning the circuit court's decision to allow the State to cross-examine him about orders-of-protection cases involving his girlfriend, Angel Spurlock, that occurred in August and September 2020, which was more than a year after Vasquez had been charged with the rapes in the instant case. In both instances, Angel filed for orders of protection against Vasquez, the first of which she later withdrew, and the second of which was granted. Vasquez argued that this evidence should be excluded because there was no testimony at trial that he is violent and that the

8

circumstances surrounding these orders of protection were not relevant to the allegation that he raped MV. The State countered that the evidence went to Vasquez's character and his credibility. In this line of questioning, the State asked Vasquez if he had followed his ex to her car, refused to get off her car, grabbed her face, smacked her face, threatened to slice her tires, and threw her phone and shoes. The circuit court overruled Vasquez's objections concerning this line of questioning on the basis of the State's assertion that it was permitted to attack his character and credibility. Once Vasquez's testimony had concluded, the circuit court invited the State to again make a record as to why the order-of-protection inquiry was admissible. At this time, the State added the argument of inconsistent statements and made a point to assure the circuit court that the standard on appeal was abuse of discretion. In sum, the circuit court allowed the line of questioning pursuant to Arkansas Rules of Evidence 401(a), 608, and 613. Nonetheless, the circuit court expressed skepticism about the soundness of its ruling and predicted a fourth jury trial if the State was wrong about its assertion on inconsistent statements.

We first note the standard of review. We review a circuit court's decision regarding the admission of evidence for an abuse of discretion. *Beard v. State*, 2020 Ark. 62, 594 S.W.3d 29. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the court acted improvidently, thoughtlessly, or without due consideration. *Id.* However, an abuse of discretion is established when the circuit court erroneously interprets or incorrectly applies the law. *Lowery v. State*, 2019 Ark. 332, 586 S.W.3d 644; *McClanahan v. State*, 2010 Ark. 39, 358 S.W.3d 900; *Reeves v. State*, 374 Ark. 415, 288 S.W.3d 577 (2008); *see also Brigance v. State*, 2018 Ark. App. 213, 548

9

S.W.3d 147 (incorrect application of Arkansas Rule of Evidence 613 constituted an abuse of discretion). Nonetheless, an appellate court will not reverse a circuit court's evidentiary ruling absent a showing of prejudice. *Beard*, *supra*.

On appeal, Vasquez challenges each of these rationales for allowing the questions concerning the orders of protection.

### A. Arkansas Rule of Evidence 404(a)(1)

Vasquez argues that relying on Arkansas Rule of Evidence 404(a)(1) was erroneous. Rule 404(a)(1) does not allow the prosecution to question him about prior orders-of-protection cases. Rule 404(a) provides that "evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except . . . evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same." Furthermore, Rule 405 addresses appropriate methods of proving character, stating:

> (a) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowed into relevant specific instances of conduct.

> (b) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of conduct.

Vasquez further asserts that in *McClellan v. State*, 264 Ark. 223, 570 S.W.2d 278 (1978), the Arkansas Supreme Court explained that Rule 405 was taken verbatim from Rule 405 of the Federal Rules of Evidence. Citing with approval to the Advisory Committee's Notes to the federal rules, the *McClellan* court explained why direct evidence of specific

conduct is limited to instances in which the trait of conduct is squarely in issue:

> Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently, the rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation and opinion.

*Id.* Thus, citing *McMullin v. State,* 2016 Ark. App. 181, 486 S.W.3d 818, he asserts that for specific instances of conduct to be admissible, the trait of character must be an operative fact, which, under substantive law, determines the parties' rights and liabilities.

Vasquez argues further that there is no doubt that the State inquired about specific instances during cross-examination in an attempt to show that Vasquez is violent and therefore must have committed the alleged rapes. The Arkansas Rules of Evidence are designed to protect against this, and the circuit court erred in admitting inquiry into these specific instances of violent character on cross-examination. *See* Ark. R. Evid. 404, 608, 609. Neither Vasquez nor his sons gave opinion or reputation testimony that he was not a violent person or that he was a peaceful person. Thus, the door was not open to rebut that notion. In addition, his character as a violent person is not an essential element to proving he committed rape or disproving his defense, which was simply that the rapes did not occur.

### B. Arkansas Rule of Evidence 608

Vasquez likewise argues that the circuit court erred in finding that Arkansas Rule of Evidence 608 allowed the line of questions relating to the orders of protection. Rule 608 provides:

11

[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Ark. R. Evid. 608. Arguing further, Vasquez cites *Gustafson v. State*, 267 Ark. 278, 590 S.W.2d 853 (1979), arguing that the three-part test adopted by the Arkansas Supreme Court to allow the admission of evidence under Rule 608(b) was not satisfied. The test requires that (1) the questions must be asked in good faith, (2) the probative value of the questions must outweigh its prejudicial effect, and (3) the prior conduct must relate to the defendant's truthfulness. *Gustafson*, 267 Ark. at 290, 590 S.W.2d at 860. Similarly, Vasquez relies on *Rhodes v. State*, 276 Ark. 203, 634 S.W.2d 107 (1982), holding that inquiries on cross-examination into specific instances of misconduct must be clearly probative of truthfulness or untruthfulness as distinguished from conduct probative of dishonesty.

## C. Arkansas Rule of Evidence 613

Finally, Vasquez argues that the circuit court erred by relying on Arkansas Rule of Evidence 613 as a basis to admit evidence on the orders-of-protection cases. Rule 613 provides that

(a) [i]n examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b) [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to

12

explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.

Vasquez notes that the State argued that the questions regarding the orders-of-protection cases were admissible because they amounted to prior inconsistent statements, but this argument was not raised until after the line of questioning had already occurred and the circuit court had asked the State to make an additional record on the issue of admissibility. The State's initial argument as to admissibility was based solely on Rules 404(a)(1) and 608, character and credibility. As the record reflects, after about eleven detailed questions about the orders of protection, Vasquez stated he remembered throwing a phone; however, according to the State, at the previous trial, he said he didn't remember throwing a phone. Rule 613 specifies how to interrogate a witness who previously gave a statement that is different from what he or she testified to at trial. This rule does not permit the State's limitless questioning on any subject, hoping that the witness will give a different answer than what he or she previously testified to, which is what happened here. The State's questions were rapid and chaotic, and it appears as though the prosecutor was trying to elicit as much information about the orders of Protection as it could. Even the circuit court was confused: "I don't think that the Court has to know" what the prior inconsistent statement was. This is abuse of discretion because the circuit court cannot possibly make a Rule 613 ruling without knowing what, exactly, the prior inconsistent statement was.

In response, the State argues that the circuit court did not abuse its discretion because it considered the arguments of counsel at the time of the objection, requested additional argument from the State, and explained the bases of its decision to allow the testimony. Thus the circuit court's ruling is "hardly" the improvident or thoughtless action that meets

the high abuse-of-discretion threshold.

We are mindful that the abuse-of-discretion standard is very deferential to the circuit court's rulings on evidentiary issues. However, the State is wrong to assume that our deference is tantamount to abdicating our role as a reviewing court. Judicial discretion means sound discretion guided by law. *Ex parte Batesville & Brinkley R.R.*, 39 Ark. 82 (1882). To be sure, "[d]iscretion means that the rules are not inflexible [and] that there is some leeway in the exercise of sound judgment." *Taylor v. State*, 2024 Ark. 68, at 4, 687 S.W.3d 335, 337. However, judicial discretion is not arbitrary, nor is it governed by the court's whim or caprice; rather, it is dependent on the settled legal principles applicable to the case. *Overton v. Alston*, 199 Ark. 96, 132 S.W.2d 834 (1939). We hold that the circuit court abused its discretion in its manifestly wrong application of the Arkansas Rules of Evidence in making its rulings regarding the orders-of-protection line of questioning. Vasquez's arguments are well supported by authority and compelling, and we adopt his reasoning. However, we are mindful that the State alternatively argued that even if a circuit court abuses its discretion, this court may affirm the appellant's convictions and deem the error harmless.

III. *Harmless-Error Analysis*

Harmless error exists when the evidence of guilt is overwhelming, and the error is slight. *Lawson v. State*, 2024 Ark. 143, 697 S.W.3d 529; *Johnston v. State*, 2014 Ark. 110, 431 S.W.3d 895. We are mindful that rape cases often turn on the relative credibility of the alleged perpetrator and the alleged victim—colloquially referred to as "he said/she said" cases. *See, e.g.*, *Watson v. State*, 2015 Ark. App. 721, 478 S.W.3d 286. Indeed, it was

14

for this reason that the court of appeals declined to find that the evidentiary error it reversed on in the appeal of Vasquez's first trial was harmless. *Vasquez v. State*, 2022 Ark. App. 328, 652 S.W.3d 58. The court of appeals relied on that same rationale in this case.

However, when the victim's testimony is particularly graphic and there is evidence that corroborates that testimony, the evidence may be deemed overwhelming. *See, e.g.*, *Buford v. State*, 368 Ark. 87, 91, 243 S.W.3d 300, 303–04 (2006) (finding harmless error when the court erroneously allowed a child-abuse expert to testify as to the victim's credibility in a rape trial, but where there were two corroborating eyewitnesses to the rape). Such was the case here.

We are mindful that Vasquez unequivocally denied raping MV. He attributed MV's accusations to her wanting to deflect blame for accidentally burning a hole in a carpet with a hot iron. However, the evidence presented by the State greatly exceeded the rationale for fabrication espoused by Vasquez.

We note first that the admissible evidence adduced by the State in this trial was significantly more comprehensive than a mere "he said/she said." First, we note that there were pornographic images extracted from Vasquez's cell phone. Furthermore, in the case before us, Nurse Smith testified as an expert. We are mindful that when we take a case on review, we vacate the court of appeals decision and are not reviewing its opinion. However, because the issue before us is whether the evidence of guilt is "overwhelming" it is nonetheless worth noting that that the court of appeals determined that the evidentiary errors were not harmless in large part because of the outcome of Vasquez's previous two jury trials, and that was error.

Regarding the sexual assaults, MV's testimony was particularly graphic, describing in detail the reaction of all five of her senses to Vasquez's sexual activities. MV stated that when she was eight years old, while sleeping on the sofa with Vasquez, he would put his fingers down her pants and touch her clitoris. She described another incident in which Vasquez put his finger "in her rear." On another occasion, MV recalled that Vasquez performed cunnilingus on her, and she also recalled waking in great pain to find Vasquez penetrating her vagina with his penis. MV also described how Vasquez repeatedly used a purple vibrator and a pink sex toy on her, which caused her vagina to "always be irritated." MV stated that Vasquez coated the sex toys with a lubricant from a blue bottle and that the lubricant irritated her vagina.

MV stated that the purple vibrator was kept in a toolbox in the kitchen and that Vasquez told her it was only for her and that she had to keep it hidden. While denying ever using the purple sex toy on MV, Vasquez nonetheless confirmed that he kept it in his toolbox. When MV disclosed to her mother that Vasquez had been sexually abusing her, to prove it, MV immediately brought Abigail the purple vibrator. Subsequent DNA testing detected a contribution of three persons' DNA from a swab taken from the device. Vasquez was conclusively found to be the major male contributor to the sample, but the complexity of the mixture precluded the crime lab from determining who the other two contributors were. On the pink device, which was retrieved from the bedroom that Vasquez shared with Abigail, Abigail was determined to be the major female contributor, but DNA analysis was inconclusive as to the other contributor. It is noteworthy that MV was able to retrieve the purple vibrator from the toolbox because Vasquez told police that the toolbox

was "off limits" to the children in the household. It is noteworthy that in Vasquez's case, his sons disputed that the toolbox was off-limits to the children in the household, which, if anything, undercut Vasquez's credibility.

MV also testified that Vasquez showed her images of child pornography on his phone, which included a young girl masturbating, a father and daughter engaging in sexual contact, and a man raping a young girl. A search of Vasquez's phone revealed images of the genitalia and the buttocks of a prepubescent female. These images corroborated MV's testimony.

Vasquez, and MV's mother, Abigail, confirmed MV's testimony that she routinely slept with Vasquez on a sectional sofa. Likewise, Vasquez, Abigail, and MV all testified that Abigail was addicted to prescription pain killers, and worked long hours, so she was not aware of what was happening on the sofa. Accordingly, the opportunity to sexually abuse MV existed several nights a week, for more than a year. MV testified that she was drawn to sleeping on the couch with Vasquez because he gave her food treats, and she stated that she "liked food." MV also testified that she was drawn to Vasquez because he paid attention to her while her mother was physically and emotionally unavailable.

Regarding MV's testimony that the lubricant in the blue bottle irritated her vagina, Abigail confirmed that on one occasion, she noticed that MV's genitals appeared to be red and irritated and that she treated it with a topical ointment. Abigail recorded "vaginitis" on MV's medical history when she brought MV to the forensic examination. Vasquez and Abigail confirmed the existence of the lubricant in a blue bottle.

Regarding the MV's testimony that Vasquez showed her images of child

17

pornography on his phone, it was independently relevant to show Vasquez's depraved instinct to engage in sex with underage girls. This proclivity was corroborated by testimony from Carlee Edwards, who knew Vasquez when he worked at an inpatient psychiatric facility. Edwards stated that while a documentary about a man caught with child pornography on his phone played on TV, Vasquez asserted that he knew methods for concealing such images.

Finally, MV explained why she delayed in disclosing Vasquez's repeated sexual abuse. MV testified that Vasquez told her that she would "go to jail" and that everyone would hate her if she revealed what was happening.

Sexual Abuse Nurse Examiner Tracy Smith, testifying as an expert witness, put much of MV's testimony in perspective for the jury. Nurse Smith testified that she conducted a forensic interview and medical examination of MV. Regarding the forensic interview, Nurse Smith opined that MV's description of what had occurred was consistent with sexual assault. Although she noted that MV's physical exam of her genitalia was "normal," she stated that 90 percent of the exams were "normal" in child sexual-abuse cases and that it was a misconception that the hymen would be destroyed in every instance of penetration. Nurse Smith further testified that vaginitis was consistent with something penetrating the vagina, although she conceded that bubble baths or laundry detergent "could" also cause vaginitis. She also opined that MV's delayed reporting of the abuse is consistent with patterns common in child sexual-abuse cases, as was Vasquez's efforts to entice MV to submit to his sexual advances—she called it "grooming"—by giving her rewards, showing her attention, and later sharing with her images of child pornography.

For the second part of the harmless-error formulation, we consider the evidentiary errors by the circuit court. While egregious from a technical perspective, it is obvious that they were only mildly prejudicial to Vasquez. Prior to the State's resort to the orders-of-protection line of questioning, Abigail testified without objection that Vasquez reacted physically when he was angry with a female partner. She stated that in one such situation, he punched and broke the windshield of her car. While, strictly speaking, not cumulative evidence, it put Vasquez in a similar bad light. Moreover, the acts complained of were relatively minor, particularly in light of the reprehensible crimes he was charged with.

We hold that the evidentiary errors by the circuit court were harmless and therefore affirm Vasquez's convictions.

Affirmed; court of appeals opinion vacated.

BAKER, C.J., dissents.

**KAREN R. BAKER, Chief Justice, dissenting.** I agree with the majority that the circuit court abused its discretion when it permitted the State to question Vasquez regarding details from prior unrelated order-of-protection cases. However, because this error was not harmless, I must dissent.

As an initial matter, it is important to note that we have not been tasked with assessing the sufficiency of the evidence supporting Vasquez's convictions. Instead, the relevant inquiry is whether the circuit court's error was harmless. We have held that even when a circuit court errs in admitting evidence, we may declare the error harmless and affirm if the evidence of guilt is overwhelming and the error is slight. *Johnston v. State*, 2014 Ark. 110, at 7, 431 S.W.3d 895, 899. This inquiry requires us to consider the evidence as a

whole. By comparison, when an appellant challenges the sufficiency of the evidence supporting his or her conviction, we assesses the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Sylvester v. State*, 2016 Ark. 136, at 4–5, 489 S.W.3d 146, 149. For a sufficiency challenge, we will affirm a judgment of conviction if substantial evidence exists to support it. *Id*. Our case law makes clear that a review of the evidence in the context of a harmless-error analysis is not to be confused with a determination regarding the sufficiency of the evidence in a given case. *See, e.g.*, *Beard v. State*, 2020 Ark. 62, at 10, 594 S.W.3d 29, 34. In other words, whether an appellant's conviction is supported by *substantial* evidence is a question that is both logically and legally distinct from the question of whether error on the part of the circuit court is deemed harmless in light of *overwhelming* evidence of an appellant's guilt.

When considering the evidence in this case as a whole, our case law does not support the conclusion that there is overwhelming evidence of Vasquez's guilt. Relying on *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006), the majority states that "when the victim's testimony is particularly graphic and there is evidence that corroborates that testimony, the evidence may be deemed overwhelming." Consequently, the majority concludes that the evidence of Vasquez's guilt is overwhelming because MV's testimony was "particularly graphic" and the State presented evidence that corroborated her testimony. However, that is too broad a reading of *Buford*. In *Buford*, we affirmed Buford's rape conviction, holding that the circuit court's error in permitting the State to elicit opinion testimony regarding the victim's credibility was harmless. *Id*. at 91, 243 S.W.3d at 303–04. At trial, the victim testified about the rape in graphic detail, and two eyewitnesses

also testified that they had observed the rape through a window and were able to corroborate the victim's account of the incident. *Id*. at 88, 243 S.W.3d at 301. Contrary to the majority's reading of the case, *Buford* does not stand for the general proposition that a victim's "particularly graphic" testimony of an alleged rape constitutes overwhelming evidence of an appellant's guilt as long as there is *some* evidence to corroborate it. Rather, we concluded that the evidence of Buford's guilt was overwhelming and the circuit court's error was slight because the eyewitnesses were able to directly corroborate the victim's testimony that Buford had raped him. *Id*. at 91, 243 S.W.3d at 303. This conclusion stands to reason, as the two witnesses testified before the jury that they had both witnessed firsthand the rape perpetrated by Buford. The present case is distinguishable from *Buford* because here, there were no eyewitnesses to these incidents who could corroborate MV's testimony that a rape had occurred.

Similarly, in *Johnston v. State*, we affirmed Johnston's rape convictions, holding that the circuit court's decision to allow the introduction of pornographic images found on Johnston's computer would be a harmless error in light of the overwhelming evidence of his guilt. 2014 Ark. 110, at 8, 431 S.W.3d 895, 899. Specifically, we noted that the victim's detailed testimony recounting the rapes was corroborated by medical and forensic testimony. *Id*. at 7, 431 S.W.3d at 899. The victim had disclosed the rapes to her grandmother after a weekend visit with Johnston, and Johnston's semen was found on the "crotch area" of the underwear the victim had worn home that very weekend. *Id*. at 3, 431 S.W.3d at 897. In fact, Johnston's semen was found on several pairs of the victim's underwear that were eventually collected from Johnston's home. *Id*. Additionally, a vaginal

swab from the victim's sexual-assault examination tested positive for sperm cells, and it was discovered during another examination that she had a major tear in her hymen. *Id*.

Conversely, in *Beard*, *supra*, the issue before the court was whether testimony bolstering the victims' credibility was harmless error. 2020 Ark. 62, at 7, 594 S.W.3d at 33. We ultimately reversed Beard's convictions for rape and second-degree sexual assault, reasoning that the circuit court's error was not harmless because the graphic testimony of the three victims was the only evidence supporting his convictions. *Id*. at 10, 594 S.W.3d at 34. That is, the evidence of Beard's guilt was not overwhelming. We noted that there were no independent eyewitnesses that could corroborate the victims' testimony as in *Buford*, nor was there any corroborating physical evidence. *Id*. We explained that "[s]uch evidence is not required for conviction, as the uncorroborated testimony of a rape victim is sufficient to support a conviction of rape. We recognize that the victims provided graphic testimony at trial and that they each described similar conduct on the part of Beard. But the issue here is not sufficiency of the evidence; it is whether the erroneous admission of testimony commenting on the victims' truthfulness is prejudicial." *Id*. Because the only evidence of Beard's guilt was the victims' testimony, their credibility was the foundation of the State's case and the circuit court's error in admitting testimony that directly bolstered their testimony was not slight. *Id*.

We have long held that a rape victim's testimony may constitute substantial evidence to sustain a conviction of rape. *See, e.g.*, *Brown v. State*, 374 Ark. 341, 343, 288 S.W.3d 226, 228–29 (2008). However, a review of the aforementioned cases supports the conclusion that a victim's testimony alone, while it may be *substantial* evidence to sustain a

conviction, it does not constitute *overwhelming* evidence to render a circuit court's evidentiary error harmless. Instead, for purposes of a harmless-error analysis, in certain cases where the victim testifies regarding the graphic details of an alleged rape, evidence of the appellant's guilt may be deemed overwhelming if there is either eyewitness testimony corroborating the victim's account of the rape or physical evidence to corroborate the occurrence of a rape. Of course, if the victim's testimony were deemed to be overwhelming without this corroborating evidence, there would be little substantive difference between our review of the sufficiency of the evidence and our review within the context of a harmless-error analysis, and very few errors would be reversible on appeal.

The present case is comparable to *Beard* in that the crux of the case is MV's credibility versus Vasquez's credibility. Unlike in *Buford*, there were no eyewitnesses to the alleged rapes that could corroborate MV's account of the incidents. Unlike in *Johnston*, the State presented no physical evidence that a rape had occurred. Therefore, as was the case in *Beard*, the jury was required to make a decision based largely on MV's credibility and Vasquez's credibility by weighing conflicting testimony. At trial, MV testified in detail about the alleged rapes, and Vasquez testified in his own defense to assert his innocence. The majority's conclusion that there is overwhelming evidence of Vasquez's guilt is primarily based on MV's testimony recounting the alleged rapes when weighed against Vasquez's testimony to the contrary. However, as discussed above, MV's testimony alone does not constitute *overwhelming* evidence. By way of illustration, the majority places great weight on MV's knowledge of the purple vibrator that was kept in a toolbox in Vasquez's home and the fact that she brought it to her mother as proof of the alleged rapes. The majority

explains that "[i]t is noteworthy that MV was able to retrieve the purple vibrator from the toolbox because Vasquez told police that the toolbox was 'off limits' to the children in the household." However, Vasquez's two sons testified at trial that they had both accessed the toolbox from a young age, and that they, too, had seen the purple vibrator in the toolbox. One of Vasquez's sons claimed that he had even picked up the device on one occasion. Thus, when the evidence is considered as a whole, testimony concerning MV's knowledge of the purple vibrator does not tip the scales toward a finding of overwhelming evidence.

In addition to testimony elicited at trial, the majority bases its finding of overwhelming evidence on two additional pieces of evidence—Vasquez's DNA that was found on the purple vibrator and images depicting child pornography that were discovered on Vasquez's phone. However, neither piece of evidence amounts to the kind of physical evidence that would corroborate MV's testimony that a *rape* had occurred. *See, e.g.*, *Johnston*, *supra*. Vasquez admitted having purchased the purple vibrator and removing it from its packaging, so the presence of his DNA alone does not corroborate MV's testimony that a *rape* occurred. Similarly, while unquestionably abhorrent and indicative of other criminal behavior, the presence of images depicting child pornography on Vasquez's phone alone does not corroborate MV's testimony that a *rape* occurred. Therefore, I cannot say that the evidence of his guilt is so overwhelming as to render the circuit court's error harmless.

Even if the evidence of Vasquez's guilt was considered overwhelming, I cannot say that the circuit court's error was slight. The circuit court erroneously permitted the State to question Vasquez regarding details from prior unrelated order-of-protection cases, thereby

24

allowing for the introduction of improper character evidence that Vasquez had been violent toward an ex-girlfriend more than a year after he was charged with raping MV. Because this case turns on MV's credibility versus Vasquez's credibility, and the improper evidence directly undermined Vasquez's credibility, this error cannot be considered slight.

For these reasons, I dissent from the majority opinion and would reverse and remand for a new trial.

*Erin W. Lewis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.